LANGFORD, Appellee,

v.

SLOAN, Appellant.

[Cite as *Langford v. Sloan*, 162 Ohio App.3d 263, 2005-Ohio-3735.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 20715.

Decided July 15, 2005.

Ronald G. Logan, for appellee.

Eugene Robinson, for appellant.

WOLFF, Judge.

{¶ 1} Appellant, Diane Sloan, appeals from a judgment of the Montgomery County Court of Common Pleas that vacated a deed transferring real property to her from appellee, Vincent Langford, and ordered her to pay $14,480 plus interest and costs.

{¶ 2} On November 20, 2002, Langford filed a complaint against Sloan for the fraudulent transfer of property located at 58–60 Vincent Street in Dayton, property in which Sloan had lived as a tenant. The court issued an injunction enjoining Sloan from transferring the property or encumbering the title. The matter was referred to a magistrate. The magistrate required Sloan to pay an amount equivalent to her previous rent into escrow. Sloan filed a counterclaim for $210,000 for expenses, restitution, time off from work, and her alleged inability to rent the property or make improvements to it while this action was pending.

{¶ 3} The magistrate conducted a hearing on March 23, 2004. Following the hearing, the magistrate filed a decision recommending that judgment be entered

in favor of Langford, that the deed recorded by Sloan on October 18, 2002, be vacated, and that Sloan be ordered to pay $14,480 plus interest and costs. Sloan filed objections to the recommendation. On September 13, 2004, the trial court adopted the magistrate's decision and entered judgment for Langford.

{¶ 4} Sloan raises three assignments of error on appeal. We will address these assignments together.

The trial court committed prejudicial error in its finding that the statements attributed to appellant by the plaintiff, which constituted no more than promises of future performance, were fraudulent.

The trial court committed prejudicial error [in its finding] that plaintiff was justified in reliance on the statements plaintiff attributed to defendant, which statements, if made by appellant, concerned only her future performance.

The trial court committed prejudicial error in concluding that plaintiff's deed was delivered with a condition that defendant would use it only for approval of a loan for payment of a purchase price.

{¶ 5} In Sloan's assignments of error, she essentially argues that the trial court could not have found that the elements of fraud had been proved based on the evidence presented. A brief review of the evidence will be helpful to our discussion of these assignments.

{¶ 6} Langford and Sloan knew each other from their work as cab drivers. Sloan moved into investment property owned by Langford at 58–60 Vincent, a duplex, in May 2000. She paid $260 per month, plus utilities and a $300 deposit. In June 2002, Langford attempted to sell the duplex through a realtor. The original list price was $64,900. Sloan made an offer of $30,000, which Langford rejected. Sloan subsequently made an offer of $60,000, conditioned on the completion of some repairs by Langford. Langford accepted the offer, but Sloan made no attempt to obtain financing, and the offer expired. Sloan then inquired as to what price Langford would accept if she purchased the house "as is." Langford indicated that because he was no longer under an obligation to pay a commission to the realtor and would not have to complete any repairs, he would sell the duplex "as is" for $43,000. Sloan offered this amount, but she told Langford that she would need the deed in order to get a loan. Langford completed the "top portion" of the deed but "left the bottom part open," and he gave it to Sloan. Langford believed that the fact that the bottom part had not been completed and the document had not been witnessed prevented the deed from being recorded.

{¶ 7} On October 18, 2002, Langford drove Sloan downtown and dropped her off near her bank, where he believed she was going to obtain financing. However, he did not hear from Sloan for more than a month, at which point the

tenant in the other side of the duplex informed him that the tenant had been instructed by Sloan to pay the rent to her, as she was now the owner of the property. Langford then called the county recorder's office and discovered that Sloan had recorded the document he had completed, effectuating a transfer of the property to her on October 18, 2002, the day that he had taken her downtown. She had recorded the price as $25,000. Langford had not received any money from Sloan for the purchase of the property.

{¶ 8} Sloan recalled the events very differently. She testified that she had expressed her desire to own the duplex from the first time that she had talked with Langford about moving there and that their agreement had been for her to rent to own. She stated that from the outset, they had agreed on a price of $30,000 and had agreed that her deposit and all of her rent payments were to be applied, in total, against this purchase price. The other tenant's rent payments were also to have been applied against the purchase price. Sloan stated that she had been upset when Langford put the house up for sale in June 2002 and had contacted the realtor because she did not want to lose her money. She stated that she gave Langford another $2,500 toward the purchase of the house around this time and that another $2,000 that she had given him as part of an automobile transaction was later supposed to be applied to the price of the house.

{¶ 9} According to Sloan, Langford informed her in October 2002 that she was "paid up" on the house. She offered him another $3,000 or $4,000 more "to make sure regardless of whether or not [she] still owed." Langford then completed the deed, filling in the $25,000 purchase price himself, and drove her downtown to the county building for the purpose of recording the deed. Sloan admitted that she had not paid any money to Langford subsequent to the recording of the deed, had not paid property taxes since the transfer, and did not have insurance on the house at the time of trial.

{¶ 10} The elements of an action in fraud are as follows: (a) a representation or, where there is a duty to disclose, concealment of a fact (b) that is material to the transaction at hand (c) made falsely with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying on it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance. *Gaines v. Preterm–Cleveland, Inc.* (1987), 33 Ohio St.3d 54, 55, 514 N.E.2d 709. Sloan claims that the evidence presented in this case failed to establish fraud because the statements attributed to her were not representations of material fact and, in any event, Langford had not justifiably relied on Sloan's statements.

{¶ 11} With respect to the characterization of Sloan's statements, she asserts that a promissory statement that something will be done in the future—in this

case, that she would use the deed to apply for a loan—cannot be a representation of material fact because it is not true or false at the time of the representation. In other words, she claims that because her statements about obtaining financing in the future were not "statements of existing or past fact," they could not be representations of material fact.

{¶ 12} The law on this issue, as set forth by the magistrate, is as follows:

{¶ 13} "As a general rule, fraud cannot be predicated upon statements which are promissory in their nature when made, and which relate to future actions or conduct, since a representation that something will be done in the future, or a promise to do it, from its nature cannot be true or false at the time when it is made, and thus cannot generally be fairly viewed as a representation of fact. *Nilavar v. Osborn* (1998), 127 Ohio App.3d 1, 711 N.E.2d 726, modified on reconsideration (May 12, 1998).

{¶ 14} "However, an exception to the general rule barring fraud on the basis of promises about future performance exists where an individual makes a promise concerning future action, occurrence, or conduct and, at the time she makes it, has no intention of keeping the promise, since in such a case the individual possesses individual [sic] actual fraudulent intent, and his or her misrepresentation is thus of an existing fact—the speaker's present state of mind. *Snell v. Salem Ave. Assoc.* (1996), 111 Ohio App.3d 23, 675 N.E.2d 555."

{¶ 15} The magistrate found that Sloan had promised to apply for a loan and had promised not to record the deed until she had paid Langford. He also noted that she had recorded the deed immediately after making those promises without obtaining financing. Thus, the magistrate concluded that it was "reasonable to conclude that on October 18, 2002, the day the deed was recorded, [Sloan] had no intention of keeping her promise not to record the deed until she paid for the property." The trial court agreed, finding that applying for and securing a loan was "an essential term of the agreement between the parties."

{¶ 16} We agree with the trial court's conclusion that based on Langford's version of events, which the trial court obviously believed, Sloan had made representations of material fact with respect to her purchase of 58–60 Vincent and that these representations had been false, as evidenced by the filing of the deed immediately thereafter without obtaining or even attempting to obtain financing.

{¶ 17} Sloan further contends that Langford failed to establish justifiable reliance on her representations. Specifically, she claims that Langford had reason to doubt the veracity of her alleged representation because of her inability to obtain financing in the past. She also contends that Langford's delivery of a

deed that he mistakenly believed to be defective demonstrated that he had doubted her veracity.

{¶ 18} The magistrate analyzed this issue as follows:

{¶ 19} "The element of justifiable reliance is problematic. [Langford] knew that [Sloan] was having difficulty getting financing, or at least knew that she had not had a loan approved. He knew that she did not own any real estate. He probably had some idea of her income, being of a similar occupation. Further, a reasonable person might seriously question whether producing an unrecorded deed would have much effect on a loan officer's willingness to loan [Sloan] money. On the other hand, the amount [Langford] was seeking to have [Sloan] borrow was not all that great. An unrecorded deed might persuade some lender that [Sloan] was going to own real property that could be used as security. So it is not entirely unrealistic to conclude that [Langford] honestly believed that [Sloan] was going to use the unrecorded deed to obtain a loan and not file it with the Recorder until a later date."

{¶ 20} The trial court also concluded that it was reasonable, and thus justifiable, for Langford to have relied on Sloan's representations.

{¶ 21} In our view, while Langford may have had reason to doubt whether Sloan would be successful in obtaining financing, he could have reasonably believed, and justifiably relied on, Sloan's representation that she would attempt to get financing. He could have also reasonably believed that possession of the deed might facilitate the attempt to get financing. Thus, we are of the view that the trial court's conclusion was supported by the record.

{¶ 22} Finally, Sloan argues that Langford's delivery of a deed that he believed to be defective showed that he had not relied on her promise to obtain financing, but had instead taken his own steps, albeit ineffective ones, to protect himself. In other words, she argues that her promise to obtain financing was not necessary to induce Langford to deliver the deed because he had believed that the deed was defective. She argues that Langford's delivery of a deed that he believed to be defective was inconsistent with his claim that he had relied on her promise not to record the deed.

{¶ 23} Langford's belief that the deed was incomplete for purposes of effectuating a transfer is not necessarily inconsistent with the conclusion that he gave the deed to Sloan in reliance on her claim that she would use it only for the purpose of obtaining financing. One can rely on the representation of another, yet proceed cautiously. The fact that Langford believed he had taken a measure to protect himself in the event that Sloan was not trustworthy should not work to Sloan's benefit.

{¶ 24} In sum, the trial court reasonably concluded that Langford's version of events was more credible than Sloan's and that it established fraud. Therefore, Sloan's assignments of error are overruled.

{¶ 25} The judgment of the trial court is affirmed.

Judgment affirmed.

BROGAN, P.J., and DONOVAN, J., concur.