DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 INTRODUCTION {¶ 1} Jack W. Morrison Jr. is in the business of buying houses, refurbishing them, and renting them to college students. Tom Campensa, a real estate agent, showed Mr. Morrison a house owned by Jonas Bare. Mr. Morrison noticed a sticker on the furnace that indicated it had a cracked heat exchanger. After checking with Mr. Bare, Mr. Campensa told Mr. Morrison that the furnace had been repaired in 2004. Mr. Morrison executed a contract to purchase the house, but included a "special condition" in the contract that Mr. Bare would provide him a copy of the 2004 furnace repair bill within 14 days. Mr. Bare *Page 2 
supplied a copy of a 2004 bill for repairs, but those repairs did not include replacing the heat exchanger. Instead of closing on the house, Mr. Morrison sued Mr. Bare for specific performance and breach of contract and sued Mr. Bare, Mr. Campensa, and Mr. Campensa's real estate agency for fraud. The trial court granted summary judgment to all three defendants, and Mr. Morrison appealed. His sole assignment of error is that the trial court incorrectly granted the defendants summary judgment. This court affirms the trial court's judgment because: (1) Mr. Morrison neither performed his part of the contract nor showed his "readiness and ability" to do so; (2) the requirement that Mr. Bare provide a bill showing that the heat exchanger was repaired was a condition for Mr. Morrison's performance, not a promise; and (3) Mr. Morrison did not justifiably rely upon Mr. Campensa's statement that the heat exchanger had been repaired.
 BACKGROUND {¶ 2} Mr. Morrison noticed a for-sale sign on the house at issue in this case and told Mr. Campensa he would like to look at it. Mr. Campensa walked though the house with Mr. Morrison and Mr. Morrison's father. The house was in disrepair, and the utilities were disconnected. During the walkthrough, Mr. Morrison noticed a sticker on the furnace that indicated it had a cracked heat exchanger. When he was deposed, he said the sticker had caused him concern because he knew that a cracked heat exchanger meant the furnace would have to be replaced. He further testified that he questioned Mr. Campensa about the heat *Page 3 
exchanger and Mr. Campensa said that he would check with the seller, Mr. Bare, to see whether it had been fixed.
 {¶ 3} At some point after the walkthrough, Mr. Campensa talked to Mr. Bare about the furnace. Mr. Campensa testified that he told Mr. Bare that the furnace had a sticker on it indicating that it had a cracked heat exchanger and that Mr. Bare told him the furnace had been repaired. Mr. Bare testified that he did not recall whether Mr. Campensa had specifically mentioned the cracked heat exchanger, but that he had told Mr. Campensa the furnace had been repaired. Either way, Mr. Morrison and Mr. Campensa agree that Mr. Campensa told Mr. Morrison that the heat exchanger had been repaired.
 {¶ 4} Mr. Morrison did a second walkthrough of the house, this time with an inspector. He testified that his purpose for having the inspector look at the house with him was to try to estimate the cost of needed repairs and to "generally just look around the property." The utilities were still off at the time of his second walkthrough. During the second walkthrough, Mr. Morrison concluded that the kitchen floor would have to be replaced. He and his inspector also noted some problems with windows and drywall. They looked at the sticker on the furnace, but did not attempt to independently determine whether the heat exchanger had been repaired.
 {¶ 5} Following his second walkthrough, Mr. Morrison made a written offer to purchase the house for $40,000, using a form real estate purchase *Page 4 
agreement. The form included a provision permitting Mr. Morrison to have the house inspected and, if not satisfied, to notify Mr. Bare within fourteen days of the date of the agreement. If any unsatisfactory conditions could not be resolved, Mr. Morrison could void the agreement or accept the property in its "as is" condition. The form further provided that, if Mr. Morrison did not have the home inspected or did not notify Mr. Bare of any unsatisfactory conditions, he would take the property in its "as is" condition.
 {¶ 6} Under the heading "Special Conditions," Mr. Morrison wrote: "Seller to supply buyer with copy of furnace repair bill from 2004 within 14 days." Mr. Campensa acknowledged at his deposition that the purpose of the "special condition" was to allow Mr. Morrison to satisfy himself that the heat exchanger had been repaired. At the same time he signed the written offer, Mr. Morrison also signed a property disclosure form in which he acknowledged that he was purchasing the property "as is."
 {¶ 7} Four days after he made his written offer, Mr. Morrison signed an amendment to that offer, removing his right to inspect the property. The amendment further provided that Mr. Morrison recognized that neither Mr. Bare nor Mr. Campensa was warranting the property in any manner:
 In exercising or waiving their right to inspect, the Buyer(s) are not relying upon any representation about the property made by the Seller(s), Broker(s), Agent(s), other than those representations specified in the purchase agreement. The Buyer(s) understand that the Seller(s), Broker(s), Agent(s), and/or inspector(s) do not warrant or guarantee the condition of the property in any manner whatsoever. *Page 5 
Three days later, Mr. Bare signed both the form purchase agreement and the amendment, thereby accepting Mr. Morrison's offer to purchase the house.
 {¶ 8} Prior to the date set for closing, Mr. Campensa obtained a copy of the 2004 furnace repair bill. That bill indicated that repairs totaling $234 had been made to the furnace, but that the heat exchanger had not been repaired. In fact, it included a quote to replace the furnace for $1600 and a notation that, if a new furnace was installed within 30 days, the $234 for repairs would be deducted from the cost of the new furnace.
 {¶ 9} Mr. Campensa telephoned Mr. Morrison and told him that the heat exchanger had not been repaired. At that point, Mr. Morrison told Mr. Campensa that he would close on the house only if Mr. Bare either replaced the furnace or reduced the purchase price in an amount equal to what it would cost to replace the furnace. Mr. Bare was unwilling to do either.
 {¶ 10} Mr. Campensa sent Mr. Morrison a copy of the bill, along with a proposed addendum to the purchase agreement. The proposed addendum provided that Mr. Morrison agreed to accept the property with the furnace "in its as is condition and assume all responsibility for its repair and/or replacement." Mr. Morrison refused to execute the proposed addendum.
 {¶ 11} Prior to the date set for closing, Mr. Morrison filed his complaint in this case. Mr. Bare subsequently sold the house to another purchaser, who refurbished it and rented it to college students. *Page 6 
 THIS COURT'S STANDARD OF REVIEW {¶ 12} Mr. Morrison's sole assignment of error is that the trial court incorrectly granted the defendants summary judgment. In reviewing an order granting summary judgment, this Court applies the same test a trial court is required to apply in the first instance: whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. Parenti v. Goodyear Tire Rubber Co., 66 Ohio App. 3d 826, 829 (1990).
 MR. MORRISON'S CONTRACT CLAIMS {¶ 13} By his first cause of action, Mr. Morrison alleged that he was entitled to specific performance of his contract with Mr. Bare. In order to be entitled to specific performance of a contract, a plaintiff must either have performed his part of the contract or show his "readiness and ability" to do so. George Wiedemann Brewing Co. v. Maxwell,78 Ohio St. 54, syllabus (1908). Mr. Morrison did neither. He had not paid the purchase price for the property and he had told Mr. Campensa that he was unwilling to do so unless Mr. Bare replaced the furnace or reduced the purchase price. As discussed below, the contract did not require Mr. Bare to replace the furnace or reduce the purchase price. Accordingly, Mr. Morrison is not entitled to specific performance.
 {¶ 14} Additionally, by the time the trial court granted summary judgment in this case, the property had been sold to a third party. When property has been transferred to a bona fide purchaser, specific performance is not available. See *Page 7 Steeg v. Scharenberg, 20 Ohio App. 2d 151, 153 (1969); Alexander v.Greenfield, 94 Ohio App. 471, 478-479 (1951). Mr. Morrison has not argued that the person who purchased the property from Mr. Bare was not a bona fide purchaser. Accordingly, this is a second reason he is not entitled to specific performance.
 {¶ 15} By his second cause of action, Mr. Morrison sought damages for breach of contract. Mr. Bare has argued that the "special condition" was satisfied when he provided Mr. Morrison a copy of the 2004 bill for repairs to the furnace, even though, instead of showing that the heat exchanger had been repaired, it showed that it had not been repaired.
 {¶ 16} There can be no doubt that, in order to satisfy the "special condition" that Mr. Morrison included in his offer, the repair bill had to show that the heat exchanger had been repaired. Mr. Campensa, who was Mr. Bare's agent, acknowledged that the purpose of the "special condition" was to allow Mr. Morrison to satisfy himself that the heat exchanger had been fixed:
 Q. All right. On line 103 it says, "Seller to supply buyer with copy of furnace repair bill from 2004 within 14 days," correct?
 A. Correct.
 Q. Why was that provision put in the contract?
 A. Because there was the potential that that was cracked in there was a cracked thing and Jack wanted to know if it was fixed or not.
 Q. Okay. Because you believed it had been repaired based on your conversation with Jonas Bare, correct?
 A. Yes. *Page 8 
 Q. And you had told Jack that it had been repaired, did you not?
 A. Yes.
 Q. So Jack wanted to make sure as part of this deal that that furnace had already been repaired, correct?
 A. Correct.
Mr. Bare's argument that he satisfied the condition by supplying a bill showing that the heat exchanger had not been repaired is, at best, disingenuous. Both parties knew at the time they entered the contract that the bill Mr. Bare needed to supply to satisfy the "special condition" was a bill showing that the heat exchanger had been repaired.
 {¶ 17} That, however, does not mean that Mr. Bare breached the purchase agreement by not delivering a bill that showed the heat exchanger had been repaired and by not replacing the furnace or lowering the purchase price. To begin with, the contract does not include a promise by Mr. Bare that, if the heat exchanger was not repaired in 2004, he would replace the furnace or reduce the purchase price. Further, the "special condition" that Mr. Morrison included in the contract was just that, a condition, not a promise:
 [P]romise and condition are very clearly different in character. One who makes a promise thereby expresses an intention that some future performance will be rendered and gives assurance of its rendition to the promisee. Whether the promise is express or implied, there must be either words or conduct by the promisor by the interpretation of which the court can discover promissory intention; a condition is a fact or an event and is not an expression of intention or an assurance. A promise in a contract creates a legal duty in the promisor and a right in the promisee; the fact or event *Page 9 
constituting a condition creates no right or duty and is merely a limiting or modifying factor.
8 Catherine M.A. McCauliff, Corbin On Contracts, Section 30.12 (rev. ed. 1999).
 {¶ 18} Mr. Campensa told Mr. Morrison that the heat exchanger had been repaired. Mr. Morrison made his offer to purchase the house contingent upon receiving proof that it had been:
 In contract law, "condition" is an event, other than the mere lapse of time, that is not certain to occur but must occur to activate an existing contractual duty, unless the condition is excused. The fact or event properly called a condition occurs during the performance stage of a contract, i.e., after the contract is formed and prior to its discharge.
John Edward Murray Jr., Murray on Contracts, Section 99B (4th ed. 2001) (emphasis in original); Restatement (Second) of Contracts, Section 224 (1981). While the failure to perform a promise is a breach of contract, the failure to satisfy a condition is not:
 A promise is always made by the act or acts of one of the parties, such acts being words or other conduct expressing intention. A fact can be made to operate as a condition only by the agreement of both parties or by the construction of the law. The purpose of a promise is to create a duty in the promisor. The purpose of constituting some fact as a condition is always the postponement or discharge of an instant duty (or other specified legal relation). The non-fulfillment of a promise is called a breach of contract, and creates in the other party a secondary right to damages. It is the failure to perform a legal duty. The non-occurrence of a condition will prevent the existence of a duty in the other party; but it may not create any remedial rights and duties at all, and it will not unless someone has promised that it shall occur.
Corbin On Contracts, at Section 30.12. *Page 10 
 {¶ 19} The fact that, to satisfy the "special condition," Mr. Bare would have had to do something (supply the bill showing that the heat exchanger had been repaired) did not mean that it was a promise rather than a condition. A condition can be an act to be done by one of the parties to the contract:
 Virtually any act or event may constitute a condition. The event may be an act to be performed or forborne by one of the parties to the contract, an act to be performed or forborne by a third party, or some fact or event over which neither party, or any other party, has any control.
Murray on Contracts, at Section 99C. In this case, Mr. Bare had partial control over the condition. Even if he had a bill showing that the heat exchanger had been repaired in 2004, he could have chosen not to deliver it to Mr. Morrison, in which case the condition would not have been satisfied. It also, however, was partially out of his control. Since the heat exchanger had not been repaired in 2004, he was unable to satisfy the condition. The material part of the condition was that Mr. Morrison had to be satisfied that the heat exchanger had been repaired.
 {¶ 20} Section 225 of the Restatement (Second) of Contracts (1981) describes the consequences of the non-occurrence of a condition:
 (1) Performance of a duty subject to a condition cannot become due unless the condition occurs or its non-occurrence is excused.
 (2) Unless it has been excused, the non-occurrence of a condition discharges the duty when the condition can no longer occur.
 (3) Non-occurrence of a condition is not a breach by a party unless he is under a duty that the condition occur. *Page 11 
In this case, Mr. Morrison's duty to pay the purchase price did not come due because Mr. Bare could not produce a 2004 bill showing that the heat exchanger had been repaired. Once it became clear that it was impossible for Mr. Bare to produce such a bill, Mr. Morrison could have excused the condition and closed on the property. Alternatively, he could have treated his duty to close as discharged and the contract terminated:
 [I]f a time comes when it is too late for the condition to occur, the obligor is entitled to treat its duty as discharged and the contract as terminated.
II E. Allan Farnsworth, Farnsworth On Contracts, Section 8.3 (3rd ed. 2004).
 {¶ 21} By informing Mr. Campensa that he was unwilling to close on the house unless Mr. Bare replaced the furnace or reduced the purchase price, Mr. Morrison chose to treat his duty to pay the original purchase price as discharged and the contract as terminated. His proposal to go forward under different conditions was, in effect, an offer to enter into a new contract; a new contract that Mr. Bare was free to reject, which he did.
 {¶ 22} Upon the failure of the "special condition" that he included in the real estate purchase agreement, Mr. Morrison treated the agreement as terminated, as he was entitled to do. The failure of the "special condition" was not a breach of contract.
 {¶ 23} There are no genuine issues of material fact, and Mr. Bare is entitled to judgment as a matter of law on Mr. Morrison's demand for specific *Page 12 
performance and on his breach of contract claim. To the extent Mr. Morrison's assignment of error is addressed to the trial court's summary judgment on his contract claims, it is overruled.
 MR. MORRISON'S FRAUD CLAIM {¶ 24} Mr. Morrison claimed that Mr. Bare, Mr. Campensa, and Mr. Campensa's real estate agency committed fraud based upon Mr. Campensa's statement to him that the heat exchanger had been repaired. In order to prove fraud, a plaintiff must present evidence that establishes six essential elements:
 The elements of an action in actual fraud are: (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.
Gaines v. Preterm-Cleveland Inc., 33 Ohio St. 3d 54, 55 (1987) (citingBurr v. Stark Cty. Bd. of Commrs., 23 Ohio St. 3d 69, paragraph two of the syllabus (1986); Cohen v. Lamko Inc., 10 Ohio St. 3d 167 (1984)). Regardless of whether Mr. Morrison presented evidence that tended to prove the other essential elements of his fraud claim, he failed to present evidence that tended to prove the fifth essential element, justifiable reliance.
 {¶ 25} Although Mr. Morrison did his best to avoid acknowledging that he had been unwilling to rely on Mr. Campensa's statement that the heat exchanger had been repaired and that he had, therefore, conditioned his offer on being *Page 13 
provided a copy of the bill for the repair work, he eventually did acknowledge that he had included that condition so he could verify that statement:
 Q. Is it fair to say that you requested that the provisions set forth in lines 103 and 104 were placed on there because you were unwilling to rely upon what you claim Tom Campensa had told you up to that point concerning the furnace?
 A. No, I wouldn't say I was unwilling. I just wanted to have that.
 Q. Well, you wanted to have it just to confirm what you had already been told?
 A. Yes.
 {¶ 26} Mr. Morrison has argued, in reliance upon Langford v.Sloan, 162 Ohio App. 3d 263, 269, 2005-Ohio-3735, that his inclusion of the condition in his offer is not evidence that he was not relying on Mr. Campensa's statement, but rather only evidence that he was being cautious and that "[o]ne can rely on the representation of another, yet proceed cautiously." The defendant in Langford had entered into an agreement to buy a house from the plaintiff. The defendant convinced the plaintiff to give her a deed to the house, which she said she would only use for the purpose of obtaining financing to close the transaction. The plaintiff believed that, because the deed he gave her was incomplete, it could not be recorded. Instead of using the deed in an attempt to obtain financing, the defendant had it recorded. The trial court found that the plaintiff had justifiably relied on the defendant's representation that she would only use the deed to obtain financing and concluded that she had committed fraud. On appeal, the defendant *Page 14 
argued that the plaintiff had not justifiably relied upon her representation because he acknowledged that he had believed the deed was incomplete and could not be recorded. The appellate court affirmed the trial court's judgment:
 [The plaintiffs] belief that the deed was incomplete for purposes of effectuating a transfer is not necessarily inconsistent with the conclusion that he gave the deed to [the defendant] in reliance on her claim that she would use it only for the purpose of obtaining financing. One can rely on the representation of another, yet proceed cautiously. The fact that [the plaintiff] believed he had taken a measure to protect himself in the event that [the defendant] was not trustworthy should not work to [the defendant's] benefit.
Id. at ¶ 23.
 {¶ 27} The facts in this case are not analogous to those inLangford. Mr. Morrison did not take "a measure to protect himself; he completely protected himself. For the facts in Langford to have been analogous, the plaintiff in that case would have had to have accompanied the defendant to the bank before he delivered the deed to her and, once she used it to apply for financing, reclaimed it. In Langford the defendant recorded the deed. In this case, because Mr. Morrison completely protected himself from the possibility that what Mr. Campensa told him was not true, he did not close on the house. "Trust but verify" may be a valid diplomatic concept, but it is an oxymoron when it comes to "justifiable reliance."
 {¶ 28} Mr. Morrison has suggested that he never would have paid $500 in earnest money had Mr. Campensa not told him the heat exchanger had been repaired. When asked at his deposition where that earnest money was, Mr. Campensa testified that it was still being held in escrow. Presumably, it is Mr. *Page 15 
Morrison's for the asking. In the absence of evidence that his $500 is not available to be returned, payment of his earnest money cannot constitute injury for purposes of his fraud claim.
 {¶ 29} There are no genuine issues regarding whether Mr. Morrison justifiably relied upon Mr. Campensa's statement that the heat exchanger had been repaired. To the extent his assignment of error is addressed to the trial court's summary judgment on his fraud claim, it is overruled.
 III. {¶ 30} Mr. Morrison's assignment of error is overruled. The judgment of the Summit County Common Pleas Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). *Page 16 
The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
 SLABY, P. J. WHITMORE, J. CONCUR *Page 1