OPINION
{¶ 1} Plaintiff-appellant, James W. Anderson, III ("Anderson"), appeals from the judgment of the Franklin County Court of Common Pleas, which granted judgment in favor of defendant-appellee, Dixie F. Baker ("Baker").
 {¶ 2} In July 2006, Anderson filed a complaint against Baker in the Franklin County Municipal Court. Anderson alleged that Baker (1) had failed to pay him rent and other living expenses, (2) had failed to pay on promissory notes, (3) had damaged him *Page 2 
and his reputation, and (4) had been unjustly enriched. Baker filed an answer denying the substantive allegations. She also asserted counterclaims for (1) violations of the Ohio Consumer Sales Practices Act ("CSPA"), (2) Truth-in-Lending violations, (3) defamation, (4) conversion, (5) negligent or intentional infliction of emotional distress, (6) intentional interference with business relationships, and (7) frivolous conduct under R.C. 2323.51. Because the matter involved more than $15,000, the case was removed to the common pleas court.
 {¶ 3} In September 2007, Baker moved for summary judgment on all of Anderson's claims. Anderson moved for summary judgment on his claims regarding Baker's failure to pay rent and other expenses and to pay on the promissory notes. In January 2008, the court granted in part and denied in part Baker's motion. Specifically, the court granted summary judgment in Baker's favor on Anderson's claims that Baker (1) failed to pay rent and other expenses, (2) failed to pay on the promissory notes, (3) made fraudulent misrepresentations, and (4) was unjustly enriched. The court denied Baker's request for summary judgment on her counterclaims and denied Anderson's motion for summary judgment.
 {¶ 4} Thereafter, the court granted leave for Anderson to move for summary judgment on Baker's counterclaims, and Anderson did so in April 2008. The court granted in part and denied in part Anderson's motion. Specifically, the court granted summary judgment for Anderson on Baker's counterclaims regarding (1) CSPA violations, (2) Truth-in-Lending violations, (3) negligent or intentional infliction of emotional distress, and (4) frivolous conduct under R.C. 2323.51. The court denied *Page 3 
summary judgment on Baker's counterclaims regarding (1) defamation, (2) conversion, and (3) intentional interference with business relationships.
 {¶ 5} The court conducted a bench trial in April 2008. At the outset, the court stated that it had reconsidered its grant of summary judgment on the issue of Baker's payment on the promissory notes. The court's reconsideration arose from its determination that the notes would be used as evidence on the defamation claim.
 {¶ 6} Following the trial, the court issued a detailed written decision. As we will discuss in more detail below, the trial court concluded the following. First, on Anderson's claim for payment on the promissory notes, the court concluded that the purported notes were unenforceable and re-entered judgment in favor of Baker. Second, on Baker's counterclaim for defamation, the court concluded that Anderson had defamed Baker and awarded Baker compensatory damages of $3,000 and punitive damages of $600. Third, on Baker's counterclaim for conversion, the court concluded that Anderson had retained some of Baker's property and ordered Anderson to return it within ten days. Finally, on Baker's counterclaim for interference with business relationships, the court concluded that Baker had not proven that she had been damaged.
 {¶ 7} Anderson filed a timely appeal, and he raises the following assignments of error:
 I. THE TRIAL COURT COMMITTED HARMFUL ERROR WHEN IT RULED IN FAVOR OF [BAKER] ON HER DEFAMATION CLAIM AFTER TRIAL.
 II. THE TRIAL COURT ERRED WHEN IT DENIED [ANDERSON'S] CLAIMS ON THE PROMISSORY NOTES SIGNED BY [BAKER] AFTER TRIAL. *Page 4 
 III. THE TRIAL COURT ERRED WHEN IT RULED IN FAVOR OF [BAKER] ON HER MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS OF [ANDERSON].
 {¶ 8} In his first assignment of error, Anderson asserts that the court erred when it ruled in favor of Baker on her counterclaim for defamation. Anderson does not challenge the court's finding that defamation occurred. Instead, he limits his arguments to the court's award of $3,600 in damages and argues that this damage award is "excessive and not nominal."
 {¶ 9} Defamation is a false publication that causes injury to a person's reputation, exposing the person to public hatred, contempt, ridicule, shame or disgrace, or affecting the person adversely in his or her trade or business. Miller v. Cent. Ohio Crime Stoppers, Inc., Franklin App. No. 07AP-669, 2008-Ohio-669, ¶ 10. There are two categories of actionable defamation. Defamation per quod occurs when a publication is merely capable of being interpreted as defamatory, and the plaintiff must allege and prove damages. Id. at ¶ 11. Defamation per se occurs when the words are of such a nature that a court may presume, as a matter of law, that they tend to degrade or disgrace the person of whom they are written or spoken, or hold him or her up to public hatred, contempt or scorn. Id. at ¶ 12, citing Moore v. P.W. Publishing Co.
(1965), 3 Ohio St.2d 183, 188. When a statement is defamation per se, damages and actual malice are presumed to exist. Miller at ¶ 12.
 {¶ 10} Here, the trial court found that defamation per se existed. Therefore, damages are presumed.
 {¶ 11} The trial court acknowledged that "there is not strong evidence that any damages were caused by such defamatory statements other than Baker's own *Page 5 
individual upset." No witnesses testified that they believed the statements, the number of people exposed to Anderson's statements was very small, and Baker herself should have expected Anderson's sentiments. In the end, the court concluded that "the damages proximately caused Ms. Baker are fairly assessed as little more than nominal under all the circumstances presented." Id. Anderson asserts, however, that "[m]ost jury awards of nominal damages constitute $1.00 or $10.00 at best."
 {¶ 12} Some courts have noted that, once defamation per se is established, "general damages are presumed and nominal damages are available in any event." Shoemaker v. Community Action Organization ofScioto Cty., Inc., Scioto App. No. 06CA3121, 2007-Ohio-3708, ¶ 13. See, also, Rainey v. Shaffer (1983), 8 Ohio App.3d 262, 264, citing 34 Ohio Jurisprudence 2d (1958), Libel and Slander, Sections 103-124 ("[n]ominal damages may be awarded even if no actual loss is proven). But Anderson offers no precedent for the proposition that only nominal damages may be awarded, nor have we found any.
 {¶ 13} Baker testified that Anderson's statements caused a decline in the number of students taking her dance classes and damaged her reputation within the dance community. She estimated that she lost $5,000 to $10,000 in business income. In the context of rejecting Baker's claim of tortious interference with business relationships, however, the court found that Anderson's statements did not damage Baker in her ongoing or prospective business relations. The court also found that her claim of lost income due to a decline in class attendance was "speculative." Therefore, we will not consider this testimony for purposes of establishing lost income damages due to Anderson's defamatory statements. *Page 6 
 {¶ 14} Baker also testified that Anderson's statements upset and humiliated her. When asked what effect Anderson's "harassment" had on her, Baker stated: "It upset me tremendously. It did then. It still does. It makes me afraid. It makes me paranoid. It upset me beyond words." (Tr. 115.)
 {¶ 15} While Anderson argues that Baker "could prove no damages from defamation," we note that, in the defamation context, "actual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." Gertz v. Robert Welch, Inc. (1974),418 U.S. 323, 350, quoted in Gilbert v. WNIR 100 FM (2001),142 Ohio App.3d 725, 745 (stating that pain, suffering, anguish, humiliation, and embarrassment "are the very damages envisaged by the United States Supreme Court in Gertz").
 {¶ 16} In its written decision, the trial court found that there was "not strong evidence" to support an award of damages from Anderson's statements. Nevertheless, given Baker's evidence of actual injury (in the form of humiliation and mental suffering), as well as the presumption of damages where defamation per se is shown, we conclude that it was not error for the court to award damages in the amount of $3,000.
 {¶ 17} We consider, then, the court's award of $600 in punitive damages. The purpose of punitive damages is to punish and deter wrongful conduct. Moskovitz v. Mt. Sinai Med. Ctr., 69 Ohio St.3d 638, 651,1994-Ohio-324. Ohio courts have stated that, in order to recover punitive damages on a defamation per se claim, a plaintiff must prove actual damages or show that the defendant acted with actual malice.Leal v. Holtvogt (1998), 123 Ohio App.3d 51, 82; Bryans v. English Nanny Governess *Page 7 School, Inc. (1996), 117 Ohio App.3d 303, 317, citing Cashion v.Segal (May 15, 1996), Summit App. No. 17411. Other courts have stated that, "if the plaintiff is a private individual and the matter is not of public concern, the plaintiff need not show actual malice to recover punitive damages." Gilbert at 744, citing Philadelphia Newspapers, Inc.v. Hepps (1986), 475 U.S. 767, 774-775. Regardless, because Baker proved actual damages (in the form of humiliation and mental suffering) before the trial court, we need not consider whether a showing of actual malice is necessary to recover punitive damages in this context, and we conclude that she could recover punitive damages on her defamation per se claim.
 {¶ 18} As for the amount to be awarded for those damages, there is no mathematical formula to guide a fact finder. Rather, the amount of a punitive damage award must be proportionate to the actual damages and may not be so disproportionate as to indicate that the award resulted from passion or prejudice. Dale v. Ohio Civil Serv. Emp. Assn. (Sept. 28, 1989), Franklin App. No. 88AP-802, citing Gray v. Allison Div., Gen.Motors Corp. (1977), 52 Ohio App.2d 348, 358-359.
 {¶ 19} We conclude that the trial court's award of punitive damages in the amount of $600 is proportionate to the $3,000 award. Despite having evidence that Baker suffered humiliation and embarrassment over an extended period of time, the trial court awarded only $600 for Anderson's intentional statements. We discern no basis for concluding that passion or prejudice motivated the court in doing so.
 {¶ 20} For all these reasons, we conclude that the court did not err in awarding damages in the amount of $3,600 on Baker's defamation counterclaim. Therefore, we overrule Anderson's first assignment of error. *Page 8 
 {¶ 21} In his second assignment of error, Anderson argues that the trial court erred by denying his claims on the promissory notes. In essence, Anderson argues that the court's decision is against the manifest weight of the evidence. We disagree.
 {¶ 22} Anderson's attack on this ruling focuses on the court's credibility determinations. Throughout its written decision, the court concluded that Anderson's testimony was not credible. A determination of the weight of the evidence and credibility of witnesses is primarily for the fact finder. Farmers Mkt. Drive-In Shopping Ctrs., Inc. v.Magana, Franklin App. No. 06AP-532, 2007-Ohio-2653, ¶ 34, citingState v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. We give great deference to the fact finder, which has had the opportunity to view witnesses in person and to observe their demeanor, gestures, and voice inflections. Kelly v. Northeastern Ohio Univ.College, Franklin App. No. 07AP-945, 2008-Ohio-4893, ¶ 23, citingSeasons Coal Co., Inc. v. City of Cleveland (1984), 10 Ohio St.3d 77,80. Having reviewed the trial transcript, we have no reason to doubt the trial court's credibility determinations.
 {¶ 23} Regarding the "lease," the court noted that a new version of the 1999 lease surfaced for the first time at trial. In the end, the court found that the parties had not intended to create a legally enforceable contract, and it did so based on Baker's testimony that she drafted the lease only as a way to demonstrate to Anderson that she was serious about moving in with him. While Anderson urges us to accept his version of what occurred, we have no basis for rejecting the trial court's factual findings.
 {¶ 24} As for the promissory notes, the court, again, accepted Baker's version of how and why they were created. Baker testified that she created the notes because Anderson instructed her to do so. She also testified that, although she sent e-mails to *Page 9 
Anderson telling him that she owed him money, she sometimes just told him what he wanted to hear so that he would leave her alone.
 {¶ 25} When asked how much Baker actually owed him, Anderson stated that the amount was reflected in Exhibit D, which is a document signed by Baker and Anderson and dated October 12, 2001. The document purports to require Baker to make certain payments to Anderson "until such time as the sum of $9000.00 has been repayed [sic], which has been loaned to me over the last two years to cover health, relocation and legal expenses." At trial, however, Anderson also stated that additional amounts were owed and that he "couldn't tell you a dollar and cents figure right this moment." (Tr. 207.)
 {¶ 26} In the end, the court faulted both parties for not being able to account for their financial transactions and shared expenses. The court concluded that Anderson had not met his burden to prove that Baker owed him money, on the notes or otherwise. Having reviewed the evidence, we agree.
 {¶ 27} For all these reasons, we agree with the trial court's conclusion that Anderson could not collect on the purported promissory notes. Therefore, we overrule Anderson's second assignment of error.
 {¶ 28} In his third assignment of error, Anderson argues that the trial court erred by granting summary judgment in favor of Baker on Anderson's claims. We disagree.
 {¶ 29} We review a summary judgment de novo. Koos v. Cent. OhioCellular, Inc. (1994), 94 Ohio App.3d 579, 588, citing Brown v. SciotoCty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711. When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial *Page 10 
court and conducts an independent review, without deference to the trial court's determination. Maust v. Bank One Columbus, N.A. (1992),83 Ohio App.3d 103, 107; Brown at 711. We must affirm the trial court's judgment if any grounds the movant raised in the trial court support it.Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38, 41-42.
 {¶ 30} Pursuant to Civ. R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly, summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the non-moving party. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66.
 {¶ 31} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresher v. Burt, 75 Ohio St.3d 280, 292,1996-Ohio-107. Once the moving party meets its initial burden, the non-movant must set forth specific facts demonstrating a genuine issue for trial. Id. at 293. Because summary judgment is a procedural device to terminate litigation, courts should award it cautiously after resolving all doubts in favor of the non-moving party. Murphy v. *Page 11 Reynoldsburg, 65 Ohio St.3d 356, 358-359, 1992-Ohio-95, quotingNorris v. Ohio Std. Oil Co. (1982), 70 Ohio St.2d 1, 2.
 {¶ 32} First, Anderson argues that the trial court erred by granting summary judgment against him on his claim that Baker breached a lease agreement. The trial court concluded that, at the time the parties signed the purported lease, Anderson did not have a possessory interest in the property under Ohio law. Because he had no possessory interest, the court concluded, Anderson could not sublet the property to Baker. Anderson does not address this critical issue on appeal. Instead, Anderson argues that the lease should be interpreted against Baker because she drafted it. The fact that Baker may have drafted the lease does not affect its legal validity, however.
 {¶ 33} Anderson also argues that Baker is estopped from contesting the validity of the lease. As Baker asserts, however, Anderson did not raise an estoppel argument below, and he may not do so for the first time on appeal. Dunham v. Dunham, 171 Ohio App.3d 147, 2007-Ohio-1167, ¶ 69.
 {¶ 34} Anderson also argues that Baker's partial or full performance of the lease provides an exception to application of the Statute of Frauds. Anderson's argument is misplaced. The trial court applied the Statute of Frauds to invalidate any oral agreement that may have existed between Anderson and the owner of the property prior to the time the land installment contract was executed in February 2000. Baker's actions, whether supporting an estoppel argument or demonstrating partial performance of the lease, have no bearing on this purported oral agreement and, therefore, have no impact on Anderson's ownership of the property. Therefore, we reject Anderson's arguments regarding the lease. *Page 12 
 {¶ 35} Second, Anderson argues that the trial court erred by granting summary judgment against him on his claim for fraudulent misrepresentation. As an initial matter, we note that Anderson did not make a separate, specific claim for fraudulent misrepresentation. Rather, in Count 2 of his complaint, he alleged that he loaned Baker money, as reflected in the promissory notes. He also alleged that he "relied on the fraudulent misrepresentations of [Baker], on her financial status, employment, ability to repay and otherwise, in his loaning of said monies as [Baker] failed to pay or defaulted on the notes all to [Anderson's] detriment." As a result of Baker's default, Anderson alleged, he "sustained losses and other damages the extent of which will be proven at trial." In Count 3 of his complaint, Anderson alleged that, "[a]s a direct and proximate result of the fraud misrepresentations [sic], actions, and omissions" of Baker, he suffered monetary losses and damages to his reputation and credit status.
 {¶ 36} The elements of an action for fraudulent misrepresentation are the following: (1) a representation or, where a duty to disclose exists, the concealment of a fact; (2) that is material to the transaction; (3) made with knowledge of its falsity or with such disregard and recklessness as to its falsity that knowledge may be inferred; (4) with the intent to mislead another into relying on it; (5) justifiable reliance on the representation or concealment; and (6) resulting injury proximately caused by the reliance. Williams v. Aetna Fin. Co. (1998),83 Ohio St.3d 464, 475, 1998-Ohio-294; Gaines v. Preterm-Cleveland,Inc. (1987), 33 Ohio St.3d 54, 55.
 {¶ 37} As the trial court concluded, generally, promises or representations concerning future actions or conduct cannot serve as a basis for fraud. Martin v. Ohio State Univ. Found. (2000),139 Ohio App.3d 89, 98. Such statements are merely *Page 13 
opinions or predictions, not fraudulent misrepresentations. Id. We agree with Anderson, however, that a plaintiff may prevail on a claim for promissory fraud if the plaintiff proves that the defendant made a promise without the present intention of performing. Interstate GasSupply, Inc. v. Calex Corp., Franklin App. No. 04AP-980, 2006-Ohio-638, ¶ 85;Langford v. Sloan, 162 Ohio App.3d 263, 2005-Ohio-3735, ¶ 14;Applegate v. Northwest Title Co., Franklin App. No. 03AP-855,2004-Ohio-1465, ¶ 21-23.
 {¶ 38} Here, however, Anderson presented no such evidence. On appeal, he merely states: "It is clear from the record, that [Baker] had no intention of keeping her numerous promises to pay [Anderson] even though she was working." Anderson does not point us to specific evidence to support this statement. Nor did he direct the trial court to such evidence in opposition to Baker's motion for summary judgment or in support of his own motion for summary judgment on Count 2 of his complaint. Absent evidence to support his allegations, summary judgment on Anderson's fraudulent misrepresentation claim was proper.
 {¶ 39} Third, Anderson asserts that the trial court erred by granting summary judgment against him on his claim for unjust enrichment. To establish a claim for unjust enrichment, a plaintiff must show (1) a benefit conferred by the plaintiff on the defendant, (2) the defendant's knowledge of the benefit, and (3) the defendant's retention of the benefit in circumstances where it would be unjust to do so.Hambleton v. R.G. Barry Corp. (1984), 12 Ohio St.3d 179, 183. Recovery for unjust enrichment is designed to compensate the plaintiff for the benefit he has conferred upon another, not to compensate him for a loss suffered. Hughes v. Oberholtzer (1954), 162 Ohio St. 330, 335. In determining whether sufficient evidence has been presented to support a *Page 14 
claim, an appellate court must find some competent, credible evidence establishing all essential elements of the claim. Dixon v. Smith (1997),119 Ohio App.3d 308, 318, citing C.E. Morris Co. v. Foley Constr.Co. (1978), 54 Ohio St.2d 279.
 {¶ 40} The trial court concluded that Anderson could not recover on his unjust enrichment claim because he had not alleged that Baker had retained an unreasonable amount of property acquired through their joint efforts. On appeal, Anderson states only that he made "a sufficient record to demonstrate that [Baker] was conferred a benefit of housing and cash, which [Baker] accepted and knew about, and that it would be unjust for [Baker] to have benefited by these benefits, past conferred." Anderson does not direct us to specific evidence in the record to establish this conferred benefit. Nor does Anderson cite any supporting precedent relevant to these circumstances.
 {¶ 41} Ohio courts have considered claims of unjust enrichment in circumstances where two individuals cohabitate and then end the relationship. In these situations, however, a plaintiff typically seeks to recover, or be reimbursed for, a benefit being retained by the defendant. See, e.g., Cooper v. Smith, 155 Ohio App.3d 218,2003-Ohio-6083 (where the plaintiff sought reimbursement for, or return of, gifts he gave to the defendant in contemplation of marriage);Dixon (where the plaintiff sought reimbursement for her contribution to the increased value of the home in which the defendant still resided). Here, Anderson seeks to collect on a purported debt, not to recover property or benefits.
 {¶ 42} Moreover, as the trial court concluded, in order for Anderson to succeed on his claim of unjust enrichment, he had to present evidence that Baker's retention of any benefit was unjust. "[E]nrichment alone will not suffice to invoke the remedial *Page 15 
powers of a court of equity. Because [the plaintiff] is seeking the equitable remedies available under a claim of unjust enrichment, it must show a superior equity so that it would be unconscionable for [the defendant] to retain the benefit." Directory Servs. Group v. StaffBuilders Internatl. (July 12, 2001), Cuyahoga App. No. 78611.
 {¶ 43} Here, Anderson based his claims for rent on the purported lease, which the court not only found to be invalid, but also found to impose rent higher than the land installment contract required Anderson himself to pay. Anderson also bases his claim for benefits on the promissory notes, which the trial court found invalid on summary judgment and, on reconsideration, after the bench trial. Absent evidence that Baker retained a benefit or was unjustly enriched by that benefit, summary judgment on Anderson's unjust enrichment claim was proper.
 {¶ 44} For all these reasons, we conclude that the trial court did not err in granting summary judgment in Baker's favor. Therefore, we overrule Anderson's third assignment of error.
 {¶ 45} In summary, we overrule Anderson's three assignments of error. Accordingly, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
 KLATT and TYACK, JJ., concur. *Page 1