Isola BOOTH, Mattie Miles, and Jessie Posey, Plaintiffs,

v.

SECURITY MUTUAL LIFE INSURANCE COMPANY et al., Defendants.

Civ. A. No. 806–56.

United States District Court
D. New Jersey.

Oct. 31, 1957.

Koenigsberg & Rossmoore, Newark, N. J., for plaintiffs.

Stryker, Tams & Horner, Newark, N. J., for defendant, Security Mut. Life Ins. Co.

Van Riper & Belmont, Newark, N. J., for defendants, Louis Saperstein and Harlew Agency.

Harold Krieger, Jersey City, N. J., Benjamin H. Chodash, Jersey City, N. J., for defendant, Winfield Chasmar.

HARTSHORNE, District Judge.

This is a diversity class suit brought by three members of a California local of the Laundry Workers' International Union to recover for alleged breaches of trust aggregating approximately $1,000,000. The suit is brought against Louis Saperstein, an insurance agent, and Eugene James, one of the officers of the International Union, both of whom are alleged to have profited directly from such diversions of trust funds. In addition, the complaint names as defendants, Saperstein's Harlew Agency, the Security Mutual Life Insurance Company, which wrote group insurance for the Trust Fund of the International Union, as administered by a Board of Trustees, three from the employers, three from the Union, and also one Chasmar, both individually and as sole Trustee of such fund resident in New Jersey. Defendants, Security Mutual Life Insurance Company and Chasmar, have moved for summary judgment on the complaint, Fed.Rules Civ.Proc. rule 56, 28 U.S.C.

It appears undisputedly from the affidavits filed on such motion that these same plaintiffs have also brought similar class suits for the same purpose against the other Trustees of such Trust Fund in the courts to whose jurisdiction they are respectively subject. Specifically, such suits have been brought in the state courts of California against Trustees, Goldstein and Dooley, and others, and in the United States District Court for the Northern District of Illinois, Eastern Division, against Toomey, another Trustee, and as well against James and the Merchants National Bank of Chicago. Since it was discussed by all concerned on the above motion in this cause, perhaps it should be added that, after the complaint herein was filed, a suit was brought in the New Jersey state courts

against Saperstein by all the Trustees of the above Trust Fund, and that thereafter indictments were found by the Essex County Grand Jury against both Saperstein and James, largely upon the above alleged basis. But, so far as appears, this suit by the above Trustees, instituted several months after the complaint herein was filed, and some two years after the findings of the Sub-Committee of the United States Senate were published in that regard,[1] is the only court action taken by the Trustees, and this against Saperstein alone, to protect the above Trust Fund from the above alleged breaches of trust, and to regain for its benefit the losses claimed to have resulted therefrom. However, previous to the filing of the complaint, the Trust Fund Trustees herein exchanged general releases with the Security Mutual Life Insurance Company with particular regard to the matters alleged in the above complaint, that Company having therewith paid the Trustees $125,000.

■■■ On this motion for summary judgment, this court is, of course, governed by the principle laid down in Hart & Co. v. Recordgraph Corporation, 3 Cir., 1948, 169 F.2d 580, 581, and largely limited to this circuit, that

"An affidavit cannot be treated, for purposes of the motion to dismiss, as proof contradictory to well pleaded facts in the complaint."

In other words, no matter how strong the affidavits may be as to the facts, if contrary facts are properly pleaded on the other side, an issue of fact is created which requires the trial court to deny the motion for summary judgment. This court therefore turns to, and must presently accept as true, the factual allegations of the complaint as properly pleaded therein.

The complaint alleges that

"during the period from about August, 1950, to and including about June, 1954, the defendants, Saperstein, James, Chasmar, and Harlew Agency, and each of them, together with Sam J. Byers, President of L.W.I.U., and a Trustee of the Trust Fund, designated as such by L.W. I.U., and others, in furtherance of a common scheme and design, combined, conspired, contrived, and acted in concert to divert moneys belonging to such Trust Fund and to convert said moneys to their own use and benefit and for the use and benefit of their associates, in violation of the fiduciary relationship existing between them and the Trust Fund and its beneficiaries."

The complaint charges that of the more than $3,250,000 of insurance premiums paid out of the Trust Fund for this employee group insurance, more than $2,500,000 was paid to defendant, Saperstein, in his capacity as agent for defendant, Security Mutual, and that out of this sum Saperstein retained $912,000, which he failed to transmit to Security Mutual. After reciting the various means used by Saperstein to accomplish this, the complaint charges that "defendant Chasmar knew, or in the exercise of reasonable diligence should have known, of all this" and that, despite that, "Chasmar, in breach of his fiduciary obligations, took no action with respect to such facts." The complaint further charges Chasmar with similar breach of his fiduciary obligations in permitting Saperstein to retain out of the above funds more than $573,000, which James deposited in the above Chicago bank, and then withdrew for the benefit of persons unknown. The complaint further charges that defendant, Security Mutual, gave defendant, Saperstein, excessive commissions, excessive service fees, and at his instance made excessive payments to Un-

1. "Welfare and Pension Plans Investigation—Interim Report—submitted to the Committee on Labor and Public Welfare by the Sub-Committee on Welfare and Pension Funds, pursuant to S.Res.

40, 84th Cong. 1st Sess. (1955)"; also "Welfare and Pension Plans Investigation," Senate Report No. 1734, 84th. Cong. 2nd Sess. (1956).

ion welfare deputies, out of moneys which should have gone to the credit of the Trust Fund, all aggregating many hundreds of thousands of dollars. All of the above the complaint alleges that the defendant, Security Mutual Life Insurance Company, and defendant Chasmar, knew or should have known.

The complaint further alleges that defendant, Security Mutual Life Insurance Company, knowingly "assisted in" the above conspiracy. Plaintiffs frankly admit that their complaint is based upon the findings of the above Senate reports and, in addition, upon those of the so-called "A.F.L.-C.I.O. Report", same being the report of the Union Ethical Practices Committee of A.F.L.-C.I.O., which itself reviewed the above Senate reports. Plaintiffs also admit, in fact claim, in their affidavits, presently undisputed to that extent, that as mere run-of-the-mine members of this Union local they have no personal knowledge of the details of this alleged conspiracy, particularly since their. Union paper never contained any allusion to all these facts, or to this investigation by the United States Senate, and this despite the fact that the above named Byers was not only their International Union President but the head of their Union paper. The complaint accordingly asks for full discovery from all defendants, for an accounting by them, and other appropriate relief.

Turning to defendants' motions, they contend, first, that plaintiffs have no right to sue, second, that neither of these defendants is responsible for what occurred in fact.

■ As to the right of plaintiffs to sue, it is first claimed that these members of the local Laundry Workers' Union are not proper representatives of the Union and its welfare Trust Fund, since the Union contains many thousands of workers scattered all over the United States. This claim, however, is a two-edged sword. For the very fact that all the plaintiffs total many thousands, and that they are scattered all over the United States, is the very reason why the three plaintiffs here do "fairly insure the adequate representation of all", when the "persons constituting a class are so numerous as to make it impracticable to bring them all before the court." F. R.C.P. Class Actions 23(a). The only other factors of importance in determining whether a party is a proper class representative is whether his interest is coextensive with that of the class as a whole, is not antagonistic to the class, and whether he has adequate counsel to insure proper vigor of prosecution. 3 Moore's Federal Practice, § 2307. On none of these other points can defendants properly raise any serious question. Plaintiffs' status as proper class plaintiffs is clear.

■ The next point raised by defendants in this regard is that the Trust Fund indenture itself prevents plaintiffs' suing. Defendants first refer to paragraph Fifth of the general provisions of this indenture, providing that, should the Trust Fund Plan fail, it is the Union and the then members who are entitled to the Trust Fund proceeds. However, the present is not a situation of where the Trust Fund has failed, but of where Trustees have failed to protect the Trust Fund, the Trust Fund itself still providing insurance for the members. Thus, that provision of the indenture is inapplicable. Defendants further refer to Article VI, Sections 1 and 3, providing that

"The Trustees of 'The Social Security Department' * * * shall have the complete and exclusive control over"

the funds. And further that

"no employee * * * shall have any individual or representative right * * * upon any assets or funds held by or under the control of 'The Social Security Department', except such rights as are otherwise here in this agreement provided for."

■ It will be noted that in Section 3 there is retained in the employees "such rights as are otherwise herein in

this agreement provided for." The agreement provides for the taking out of insurance, with insurance payments thereunder directly to these employees and their beneficiaries. These plaintiffs and those whom they represent thus have a direct interest in the Trust Fund they now seek to protect and rehabilitate. Nor is it material that their ultimate rights are "contingent," 2 Scott on Trusts (1939) § 200, p. 1079. Furthermore, if these indenture provisions were an attempt to prevent the employees from protecting their rights in the Trust Fund formed for their benefit, such a provision would be illegal, and would in fact violate the Taft-Hartley Act, § 302(c), Title 29 U.S.C.A. § 186(c), Upholsterers' International Union of North America v. Leathercraft Furniture Co., D.C.E.D. Pa.1949, 82 F.Supp. 570, 575. Nor are the provisions of Article VI, § 1, of the trust indenture a bar to plaintiffs' rights to sue under the present alleged situation. True, normally "the Trustees of 'The Social Security Department' * * * have the complete and exclusive control over all of the * * * funds * * * of 'The Social Security Department' ". But here we have a situation where the Trustees of the Trust Fund are specifically alleged to be participants in the very conspiracy which has mulcted the Trust Fund. This is specifically alleged in the complaint as to not only defendant Trustee Chasmar but Trustee Byers, the President of the Laundry Workers' International Union, "and others", these other Trustees, as stated above, having been made defendants in similar suits in the other courts to whose jurisdiction they are alone subject because of their residence. (Of course, if defendants have any question that these "others" refer to the Trustees generally, among others, they can so advise, and this court must thereupon give plaintiffs adequate opportunity to correct this apparent clerical inadvertence.)

■ Defendants call attention to certain of the trust provisions to the effect that third parties may rely on the acts of the Fund Trustees so far as the application by the Trustees of the Fund itself is concerned. Here, however, we bear in mind that the complaint charges that both defendants Chasmar and the Insurance Company knew that trust funds were being improperly diverted and did nothing about it, and also that the Insurance Company "assisted in" such diversion. Obviously, no such Trust Fund provisions, for the protection of an innocent third party, can protect a party who knows of fraud and yet assists therein, or, under a Trustee's duty to take action, fails to do so.

■ The complaint apparently charges the Trustees generally with being participants in these breaches of trust. The law is settled that, while a Trustee is normally the right person to sue for a breach of trust, if that Trustee has participated in such breach, obviously he cannot be expected to sue himself. Then, for that very reason, the normal preliminary duty of a cestui que trust, to demand that he sue, is obviated, since the law will not require a useless thing. The right to sue, in equity, then, if not previously, inheres in the equitable beneficiary of the trust, here the very employees for whose benefit this class suit is brought.

■ Not only so, but since it is alleged in the complaint that these diversions of trust funds had been proceeding from August 1, 1950, to June 1, 1954, and that up until October 9, 1956, when the instant complaint was filed, none of the Trustees had instituted any legal proceedings whatever to protect the trust, and had taken no action whatever against Saperstein, James, or any other individual Trustee alleged to be party to the above conspiracy, it is quite clear that up until this suit was instituted, there had been, according to its allegations, a continuous neglect for two years, if not a refusal, on the part of these Trustees to perform their full duty as such Trustees. This continuous neglect of itself might well justify the employees in bringing suit, instead of applying to the Trustees to do so, all of whom are

apparently alleged to have been parties to these breaches of trust.

■ It should further be noted that none of the Trustees, other than Chasmar, can be subjected to the jurisdiction of this court. The principle then becomes applicable that

> "The beneficiary can maintain a suit in equity against the tortfeasor * * * if the trustee cannot be subjected to the jurisdiction of the court * * *" 3 Scott on Trusts, 2d ed., § 294.1, p. 2201.

■ Plaintiffs have brought the Trustees and the Trust Fund into court to the limit of their ability in the person of defendant, Chasmar. He can hardly be heard then to object to being tried for his own responsibility, particularly when his co-trustees are being pursued by plaintiffs wherever they can be reached. Indeed, when this court sought to have all the present issues determined at one time in one court, either here or elsewhere, rather than piecemeal in various courts throughout the country, these other Trustees failed to cooperate. They opposed and defeated the application of the plaintiffs here to intervene in the above suit by them in the New Jersey state courts, and they showed no interest whatever in becoming parties to this suit. In short, though all the Trustees are "necessary" parties, in the sense that they are proper parties, whose presence would shorten all this litigation, they are not "indispensable" parties, whose absence will defeat this court's power to protect the rights of the beneficiaries, when, as here, the beneficiaries have made defendant the only available holder of the legal title to the Trust Fund, and have done their utmost to reach the others.

> " * * * where one of the trustees is guilty of a breach of trust, he has violated a duty to the beneficiaries and there is no sound reason why they cannot maintain a suit against him, even though the other trustees have not refused to sue him." 2

Scott on Trusts (2d ed. 1956) § 200.-2, p. 1504.

See also Smith v. Ayer, 1880, 101 U.S. 320, 25 L.Ed. 955; Neal v. Bleckley, 1897, 51 S.C. 506, 29 S.E. 249; Restatement of Trusts, § 282; 3 Scott on Trusts, 2d ed., § 294.1; 54 A.J. § 584, p. 452.

It must further be borne in mind in this regard that, on its face at least, the above release, executed by the Trustees to the Insurance Company, bars any suit by these Trustees against it. So since the Trustees can hardly be expected to rely on their own fraud, they are not in a position in any such suit to attack the validity of this release, for its alleged fraud on these beneficiaries.

As to defendant Insurance Company, a third party so far as the Trust Fund is concerned, note the following:

> "The situation is different where the trustee in breach of trust transfers property to a third person * * The wrong which he commits is a wrong to the beneficiaries in taking or retaining the property after he has notice of the breach of trust, and he thereby incurs a liability to them, unless, indeed, he is a bona fide purchaser (not the case as to one who is alleged to have 'assisted' in the breach of trust). In this situation, therefore, the beneficiaries can maintain a suit in equity against the transferee, if he took with notice of the breach of trust or paid no value * * * Primarily the liability of the transferee is to the beneficiaries rather than to the trustee, and the right of the beneficiaries against the transferee is a direct right and not one which is derivative through the trustee. "It would seem therefore, that in a suit brought by the beneficiaries against the transferee to compel him to restore the property to the trust, it is unnecessary to allege or prove that the trustee has improperly neglected or refused to sue the trans-

feree." 3 Scott on Trusts, 2d ed. § 294.1 [Parenthesis this court's.]

■ Further, the Insurance Company contends that the above release is fair, and that it is therefore binding on not only the other parties thereto, but also on the beneficiaries of the trust "regardless of the previous conduct of the parties." But this clearly argues in a circle. Of course, if the settlement is in fact fair, it is binding, but the "previous conduct of the parties" has a very important bearing on the decision of whether the settlement is fair. Specifically, if perchance, as the complaint alleges, the Trustees who participated in the release had joined in defrauding plaintiffs of large sums of money belonging to the Trust Fund, and if, as alleged, the Insurance Company had "assisted" them in this, with knowledge, by empowering their agent, Saperstein, to that end, clearly mutual releases, exchanged between these parties to this conspiracy to defraud plaintiffs, must be closely scrutinized to see if in fact it was fair to plaintiffs. For it is quite reasonable to assume, if the allegations of the complaint are correct, that the payment of $125,000 in settlement of a claim aggregating some $1,000,000, was motivated in part by the hope of the parties to the releases, that their execution would forestall the litigation now brought by plaintiffs against all such parties. In short, it is by trial alone that this issue of the fairness of the settlement can be determined.

■ Again, defendants raise the objection that the Union constitution and by-laws present channels through which the plaintiffs must first seek to obtain their rights before resort to the courts. To this it need only be said that two years of inaction by the Union and its high officials in taking any steps against those primarily responsible, plus the alleged participation by high Union officials in these frauds, combine to make it apparent that any such intra-Union remedy is presently without avail. Doubtless it is for that very reason that plaintiffs have filed the present suit. See also Upholsterers' International Union of North America v. Leathercraft Furniture Co. (supra).

■ Finally, it should be borne in mind that these individual employee members of the local Union, so far distant from the alleged prime movers, defendants Saperstein and James, and from the defendant trustee Chasmar, and the Security Mutual Life Insurance Company, are naturally, as they claim, quite ignorant personally of the true facts, as allegedly developed at the hearings before the United States Senate Committee. They claim that such facts are evidentially locked in the breasts of these defendants, and of the other similar defendants whom they have sued in the other courts above noted. Thus, on the present motion, as to the responsibility of defendants Chasmar and Security Mutual Life Insurance Company, plaintiffs are unable to present affidavits on the merits in opposition. Under such circumstances, this court, when such charges have been properly, though generally, pleaded, will deny a motion for summary judgment, in order to permit plaintiffs to take the discovery requisite for them to support the above charges.

"Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." F.R. C.P. 56(f).

The above motions of defendants Chasmar and Security Mutual Life Insurance Company will accordingly be denied.

An order may be entered accordingly.