[Cite as *Han v. Univ. of Dayton*, 2015-Ohio-346.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

SAM HAN, Ph.D.                                    :

     Plaintiff-Appellant                        :          C.A. CASE NO.    26343

v.                                                :          T.C. NO.    11CV8966

UNIVERSITY OF DAYTON, et al.       :          (Civil appeal from
                                                Common Pleas Court)

     Defendants-Appellees                       :

                                                  :

                                        . . . . . . . . . .

## **O P I N I O N**

Rendered on the ___30th___ day of ____January____, 2015.

. . . . . . . . . .

SAM HAN, 2095 Raceway Trail, Beavercreek, Ohio 45434
     Plaintiff-Appellant

PAUL G. HALLINAN, Atty. Reg. No. 0010462 and ANA E. PEREZ, Atty. Reg. No.
0090581, One South Main Street, Suite 1600, Dayton, Ohio 45402
     Attorneys for Defendants-Appellees

. . . . . . . . . .

PER CURIAM:

{¶ 1} Plaintiff-appellant Sam Han, Ph.D., appeals, pro se, a decision of the Montgomery County Court of Common Pleas, Civil Division, granting the motion for summary judgment of defendant-appellee University of Dayton, et al. (hereinafter "UD"), with respect to his claims for breach of contract, promissory estoppel, fraud, tortious interference with contractual relations, and respondeat superior. All of Han's claims derived from the University of Dayton School of Law's (hereinafter "UDSL") decision to not renew his teaching contract for the 2012 school year. Han also appeals from the trial court's decision which denied his request to conduct additional discovery in order to respond to UD's motion for summary judgment. Lastly, Han appeals the trial court's decision denying his second motion to amend his complaint and add new parties. The trial court issued a Civ. R. 58(B) notice of a final appealable order in the instant case on July 11, 2014. Han filed a timely notice of appeal with this Court on August 11, 2014.

{¶ 2} Han was hired by UDSL in August of 2008 as a non-tenured faculty member to teach in the area of patent law and intellectual property. As a non-tenured professor, Han was subject to annual performance reviews from a Promotion, Retention, and Tenure ("PRT") Committee comprised of six tenured UDSL professors appointed by the school administration for the task. The PRT committee voted to renew Han's teaching contract on two occasions after he was hired in 2009 and 2010. We note that in Han's 2010 performance evaluation, the PRT committee criticized his teaching methods, as well as two articles which he had drafted for publication in law reviews. In the evaluation, the PRT committee lauded Han for service to the educational and legal community, but cautioned him to reduce the time he spent pursuing such endeavors. Despite these criticisms, the PRT

committee voted to renew Han's contract for an additional school term.

{¶ 3} In May of 2011, the PRT committee evaluated Han again and unanimously voted not to renew his teaching contract for the 2012 school term. The former dean of UDSL who had been instrumental in Han's hiring in 2008, Lisa Kloppenberg, agreed with the PRT committee and decided to not renew his contract, specifically citing his inadequate record of scholarly publication. Kloppenberg stepped down as dean of UDSL in June of 2011, and Paul McGreal took over as dean on July 1, 2011.

{¶ 4} After a failed attempt at mediation with UDSL over the non-renewal of his teaching contract, Han filed a complaint on December 16, 2011, naming UD, UDSL, McGreal, and each of the six members of his PRT committee as defendants. The initial complaint contained claims alleging breach of contract, promissory estoppel, fraud, tortious interference with contractual relations, respondeat superior, bad faith, attorney's fees, reliance damages, and punitive damages. We note that at the commencement of the instant litigation, Han was represented by counsel, but approximately eighteen months thereafter elected to proceed pro se. On February 14, 2012, UD filed a Civ. R. 12(B) motion to dismiss all of the claims in Han's complaint. On the same day, UD filed a motion for summary judgment in which it argued that since McGreal was not involved in either the hiring or non-retention of Han, he should be permitted to be dismissed from the case.

{¶ 5} Shortly thereafter, Han filed an amended complaint on February 27, 2012. UD responded by renewing its motion to dismiss and motion for summary judgment with respect to McGreal. Ultimately, the trial court granted UD's motion for summary judgment as to McGreal, and he was dismissed from the case. Additionally, the trial court granted

UD's motion to dismiss in part regarding Han's claims for bad faith, reliance damages, and attorney's fees. Han's remaining claims for breach of contract, promissory estoppel, fraud, tortious interference with contractual relations, and respondeat superior survived UD's motion to dismiss. On April 19, 2012, Han filed a motion for partial summary judgment with respect to his claim for breach of contract.[1] UD filed a memorandum in opposition to Han's motion for partial summary judgment on May 4, 2012.

{¶ 6} On March 27, 2013, UD filed an amended answer to Han's amended complaint. In their amended answer, UD also asserted a counterclaim against Han for frivolous conduct. On April 24, 2013, Han filed a motion to dismiss UD's counterclaim for frivolous conduct. UD filed its memorandum in opposition to Han's motion to dismiss on May 8, 2013. Trial counsel for Han, Randall Stevenson, filed a motion to withdraw on May, 13, 2013, which the trial court granted on May 20, 2013. On June 3, 2013, Han filed a notice of appearance with the trial court in which he stated his intent to proceed pro se.

{¶ 7} In mid-July, 2013, Han deposed McGreal, who was by that time a non-party witness. Counsel for UD suspended the deposition shortly after it began, arguing that Han's

---

[1] We note that while the instant case was pending, Han filed a new complaint in Case No. 2012 CV 3406 in the trial court on May 11, 2012. The new complaint was against the same defendants, but contained only federal and state law discrimination claims. UD filed a Notice of Removal of the new case to the federal district court on May 17, 2012. *Han v. University of Dayton*, 6th Cir. No. 3:12-CV-140, 2012 WL 6676961 (Dec. 21, 2012). Upon being removed to federal district court, Han amended the new complaint to include all of the state law claims that were in the original complaint before the trial court in Montgomery County. UD moved to dismiss the amended complaint, but Han filed a motion for leave to file a second amended complaint, which the federal court granted. UD then moved to dismiss the second amended complaint. The federal court granted UD's motion to dismiss holding that Han's Title VII claims were time-barred and dismissed his 42 U.S.C. 1981 and R.C. 4112.02 claims alleging race and gender discrimination for failure to state a claim. *Id.* Han appealed the decision, but the federal district court's judgment was affirmed by the Sixth Circuit Court of Appeals in *Han v. University of Dayton*, 541 Fed.Appx. 622 (6th Cir.2013). Han appealed the decision of the Sixth Circuit Court of Appeals to the Supreme Court of the United States, but his petition for a writ of certiorari was denied. *Han v. University of Dayton*, 134 S.Ct. 2699 (2014).

questions were not "even remotely designed to discover admissible evidence with respect to any claim or defense" pertinent to the case. Shortly thereafter on July 23, 2013, UD filed a Joint Motion for Two Protective Orders: 1) Regarding Plaintiff's Improper Conduct at McGreal's Deposition, and 2) For a Stay of Discovery. The trial court granted the motion to stay any further discovery in an entry issued on August 16, 2013. On August 27, 2013, UD filed its motion for summary judgment. On September 25, 2013, Han filed a memorandum in opposition to UD's motion for summary judgment. In support of his memorandum in opposition, Han filed his own affidavit, as well as two other affidavits from attorneys John A. Fischer and Mary Frances Sweeney. In their affidavits, both Fischer and Sweeney aver that after reviewing "the facts and evidence in support of [Han's] claims," there "are reasonable factual bases for each and every element of all of the claims."

{¶ 8} On September 25, 2013, Han also filed a Civ. R. 56(F) motion for a continuance requesting that the trial court reopen discovery in order for him to depose two additional witnesses, Eric Chaffee and Robert Lech, who were professors at UDSL at the same time as Han. Han argued that Chaffee and Lech had consented to being deposed, and both individuals possessed "relevant, discoverable knowledge with reference to Han's claims against [UD]." Without Chaffee and Lech's deposition testimony, Han argued that he would be unable to properly respond to UD's motion for summary judgment. The trial court denied Han's Civ. R. 56(F) motion in a decision and entry issued on November 6, 2013. Han subsequently filed his own motion for summary judgment on November 25, 2013. After a hearing on February 5, 2014, the trial court overruled Han's motion for summary judgment in an entry issued on February 6, 2014. On March 18, 2014, the trial

court granted UD's motion for summary judgment with respect to all of the remaining claims advanced by Han.

{¶ 9} On April 14, 2014, Han filed a motion requesting leave to file a second amended complaint and add new parties. On May 23, 2014, the trial court overruled Han's motion to file a second amended complaint. UD dismissed its counterclaim against Han for frivolous conduct without prejudice in an entry filed on July 8, 2014. On August 11, 2014, the trial court issued a Civ. R. 58(B) notice of a final appealable order in the instant case.

{¶ 10} Han's appeal is now properly before this Court.

{¶ 11} Han's first assignment of error is as follows:

{¶ 12} "THE LOWER COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR BY EXTINGUISHING PLAINTIFF-APPELLANT'S RIGHT TO DISCOVERY."

{¶ 13} In his first assignment, Han contends that the trial court erred when it overruled his Civ. R. 56(F) motion for a continuance in order to reopen discovery in order for him to depose two additional witnesses, Professors Chaffee and Lech. Han argues that by overruling his Civ. R. 56(F) motion, the trial court "extinguished" his right to discovery and rendered him unable to properly respond to UD's motion for summary judgment.

{¶ 14} Whether to grant or deny a Civ. R. 56(F) continuance is committed to the sound discretion of the trial court. *Porter v. Ettinger*, 2d Dist. Greene No. 2006 CA 31, 2006-Ohio-6842, ¶ 14. We may then not reverse absent a demonstrated abuse of discretion. As the Supreme Court of Ohio has determined:

"Abuse of discretion" has been defined as an attitude that is

unreasonable, arbitrary or unconscionable. (Internal citation omitted). It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo*, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result.

*AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 15}   Civ. R. 56(F) states in pertinent part:

(F) When affidavits unavailable

Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just.

{¶ 16}   We discussed Civ. R. 56(F) in *Doriott, D.O. v. M.V.H.E., Inc.*, 2d Dist. Montgomery No. 20040, 2004-Ohio-867, wherein we stated that pursuant to Civ. R. 7(A), the grounds for a Civ. R. 56(F) motion for a continuance must be stated with specificity.

"In addition, Civ. R. 56(F) requires the motion to be supported by an affidavit containing 'sufficient reasons why [the non-moving party] cannot present by affidavit facts sufficient to justify its opposition' to the summary judgment motion." *Id.* at ¶ 40. "Mere allegations requesting a continuance or deferral of action for the purpose of discovery are not sufficient reasons why a party cannot present affidavits in opposition to the motion for summary judgment." *Id.*, citing *Gates Mill Inv. Co. v. Pepper Pike*, 59 Ohio App.2d 155, 169, 392 N.E.2d 1316 (8th Dist.1978). "There must be a factual basis stated and reasons given within an affidavit why a party cannot present facts essential to its opposition to the motion." *Id.*

{¶ 17} "A party who seeks a continuance for further discovery is not required to specify what facts he hopes to discover, especially where the facts are in the control of the party moving for summary judgment." *Id.* at ¶ 41; *see, e.g. Booth v. Security Mutual Life Insurance Co.*, 155 F.Supp. 755 (D.New Jersey 1957). "However, the court must be convinced that there is a likelihood of discovering some such facts." *Id.* "Further, a claim that the party has not completed discovery is more likely to be rejected by the court where the party has not shown some diligence in attempting discovery." *Id.* We note that on the date that discovery was stayed, August 16, 2013, Han's complaint had already been pending for approximately one and a half years with minimal discovery, including scheduled depositions.

{¶ 18} Han argues that he is entitled to additional discovery pursuant to Civ. R. 56(F), and the trial court erred when it denied his motion in that regard. In support of his argument, Han asserts that "UD produced zero documents in response" to his requests for

production of documents. Han points out that only one of UD's witnesses, McGreal, had been deposed, but that deposition was prematurely terminated by UD. Additionally, Han states that none of the members of his PRT committee was deposed despite his numerous requests for UD to designate a witness pursuant to Civ. R. 30(B)(5). Han supported his Civ. R. 56(F) motion with his own affidavit.

{¶ 19}   Civ. R. 30(A) states in pertinent part:

(A) When depositions may be taken. After commencement of the action, any party may take the deposition of any person, including a party, by deposition upon oral examination. The attendance of a witness deponent may be compelled by the use of subpoena as provided by Civ. R. 45. *The attendance of a party deponent may be compelled by the use of notice of examination as provided by division (B) of this rule.*

{¶ 20}   Civ. R. 30(B)(5) states in pertinent part:

(5) A party, in the party's notice, may name as the deponent a public or private corporation, a partnership, or an association and designate with reasonable particularity the matters on which the examination is requested. The organization so named shall choose one or more of its proper employees, officers, agents, or other persons duly authorized to testify on its behalf. The persons so designated shall testify as to matters known or available to the organization. Division (B)(5) does not preclude taking a deposition by any other procedure authorized in these rules.

{¶ 21}   Clearly, Civ. R. 30 contained adequate procedural mechanisms which Han

could have availed himself of in order to depose any of the witnesses whose testimony he deemed relevant to the adjudication of his claims against UD.

{¶ 22} Han did not begin conducting his own discovery in the instant case until approximately fourteen months after he filed the initial complaint. On February 22, 2013, Han issued his first written discovery requests which UD responded to in a timely fashion. UD objected to Han's discovery requests as being overbroad, indefinite, and ambiguous. UD also objected on the grounds that the requests sought peer and student evaluation materials that are generally non-discoverable absent certain circumstances. Han never challenged UD's objections to his discovery requests, nor did he ever file a motion to compel the production of any of the documents that he requested.

{¶ 23} The record establishes that counsel for UD repeatedly offered Han the opportunity to review certain documents that were unobjectionable and relevant to his discovery requests. Neither Han nor his former counsel ever attempted to review any of the documents. Moreover, the record shows that UD provided Han as deposition exhibits all of the documents that were used in its motion for summary judgment. Accordingly, Han's assertion that UD failed to provide him with any documents is undermined by the record.

{¶ 24} Significantly, the record establishes that the deposition of McGreal was terminated by defense counsel because Han kept asking irrelevant questions which sought opinions outside the proper scope of discovery. In fact, prior to the deposition, the trial court held a discovery conference wherein it approved only two of the sixteen Civ. R. 30(B)(5) topics Han had proposed for the deposition examination of UD's representative. The trial court also advised Han that discovery of peer review materials of other UDSL

faculty would not be permitted unless Han could cite to case law indicating that his claim for breach of a purported "fairness" element in his employment contract warranted such discovery. Han never produced any case law that supported his theory, nor did he abide by the trial court's admonition to only ask questions during McGreal's deposition that were within the proper scope of discovery. The following are an example of some of the questions that were asked by Han at the McGreal deposition:

Q: Do you try to teach your children to be fair?

Q: Do you think that a judge understands the concept of fairness?

Q: What is your understanding of the role of the legal system?

Q: Is it your opinion today that the word fairness is a disembodied concept that has no meaning unless there is a specific context?

{¶ 25} Defense counsel objected to these and other similar questions, warning Han that he would suspend the deposition. Han, however, continued to ask McGreal the same types of questions. Thereupon, defense counsel suspended the deposition and sought two protective orders from the trial court pursuant to Civ. R. 26(C). On August 16, 2013, the trial court granted UD's motion for the protective orders and stayed all remaining discovery in the case pending its ruling on UD's motion for summary judgment.

{¶ 26} On September 25, 2013, Han filed a memorandum in opposition to UD's motion for summary judgment. In his memorandum, Han argued that the evidence he presented in his brief, as well as the attached affidavits of two attorneys, raised genuine issues of material fact. On the same day, however, Han filed a Civ. R. 56(F) motion in which he argues that he needed additional discovery in order to raise genuine issues to

overcome UD's motion for summary judgment. Nowhere in his Civ. R. 56(F) motion nor his accompanying affidavit does Han identify any specific discovery he needs in order to oppose UD's motion for summary judgment. Han argued that he needed to take the depositions of Professors Chaffee and Lech, neither of which was involved in the non-renewal of his teaching contract. Han further asserted that he needed the professors' depositions in order to discover some unspecified information "solely in the possession or control of defendants." Han never explains what that information is or even might be. Han's failure to identify the information he wanted to discover through the reopening of discovery is fatal to his Civ. R. 56(F) motion.

{¶ 27} In the instant case, it is abundantly clear from the record that although Han claims that he was unable to complete discovery, he has failed to demonstrate how deposing Professors Chaffee and Lech would aid him in opposing summary judgment. Moreover, Han acknowledges in his Civ. 56(F) motion for a continuance that his rationale behind the motion was so that he could seek additional unspecified discovery in the event *his submitted memorandum in opposition to UD's motion for summary judgment was found to be insufficient*. This reason is not a proper basis upon which to request a Civ. R. 56(F) motion for a continuance. Accordingly, we conclude that the trial court did not err when it overruled Han's Civ. R. 56(F) motion for a continuance.

{¶ 28} Lastly, we note that Han primarily relies on two cases to support his argument that he has a right to further unidentified discovery under Civ. R. 56(F). In *Simeone v. Girard City Board of Education*, 171 Ohio App.3d 633, 2007-Ohio-1775, 872 N.E.2d 344 (11th Dist.), there was no denial of Civ. R. 56(F) relief. Rather, the 11th

District Court of Appeals reversed the trial court for failure to comply with a case management order that inappropriately "supplanted" Rule 56 procedures and protections. *Id.* at ¶ 53. In *All Erection & Crane Rental Corp. v. Bucheit*, 7th Dist. Mahoning No. 05 MA 16, 2006-Ohio-889, the appellate court found that the appellant had been denied discovery of relevant facts relating to a central issue in the case. Upon review, we find that neither of these cases supports the conclusion that Han should have been permitted pursuant to Civ. 56(F) to pursue additional, unspecified discovery before the trial court ruled on UD's motion for summary judgment.

**{¶ 29}** Han's first assignment of error is overruled.

**{¶ 30}** Han's second assignment of error is as follows:

**{¶ 31}** "THE LOWER COURT ERRED AS A MATTER OF LAW BY GRANTING SUMMARY JUDGMENT WHEN OBJECTIVE EVIDENCE OF RECORD SUPPORTED EVERY ELEMENT OF PLAINTIFF-APPELLANT'S CLAIMS, THEREBY CREATING GENUINE ISSUES OF MATERIAL FACTS FOR A JURY TO DECIDE."

**{¶ 32}** In his second assignment of error, Han argues that the trial court erred when it granted UD's motion for summary judgment with respect to all of his claims. Specifically, Han argues that the trial court erred by "1) prohibiting a jury from deciding issues of fairness and professional development; and 2) misapplying the law in ignoring all of the evidence filed with the lower court" and cited to by Han.

**{¶ 33}** When reviewing a summary judgment, an appellate court conducts a de novo review. *Village of Grafton v. Ohio Edison Co.,* 77 Ohio St. 3d 102, 105, 671 N.E.2d 241 (1996). "De Novo review means that this court uses the same standard that the trial court

should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." *Harris v. Dayton Power & Light Co.*, 2d Dist. Montgomery No. 25636, 2013-Ohio-5234*, ¶* 11 (quoting *Brewer v. Cleveland City Schools Bd. Of Edn.*, 122 Ohio App. 3d 378, 383, 701 N.E.2d 1023 (8th Dist.1997), citing *Dupler v. Mansfield Journal Co.*, 64 Ohio St. 2d 116, 413 N.E.2d 1187 (1980)). Therefore, the trial court's decision is not granted any deference by the reviewing appellate court. *Brown v. Scioto Cty. Bd. Of Commrs.*, 87 Ohio App. 3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993).

**{¶ 34}** Civ. R. 56 defines the standard to be applied when determining whether a summary judgment should be granted. *Todd Dev. Co., Inc. v. Morgan*, 116 Ohio St. 3d 461, 463, 2008-Ohio-87, 880 N.E.2d 88. Summary judgment is proper when the trial court finds: "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the Motion for Summary Judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Fortune v. Fortune*, 2d Dist. Greene No. 90-CA-96, 1991 WL 70721, *1 (May 3, 1991) (quoting *Harless v. Willis Day Warehousing Co.*, 54 Ohio St. 2d 64, 67, 375 N.E.2d 45 (1978)). The initial burden is on the moving party to show that there is no genuine issue of material fact. *Dresher v. Burt,* 75 Ohio St. 3d 280, 292-93, 662 N.E.2d 264 (1996). Once a moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings. *Dotson v. Freight Rite, Inc.,* 2d Dist. Montgomery No. 25495, 2013-Ohio-3272, ¶ 41 (citation omitted).

**{¶ 35}** Initially, Han argues that a question of fact exists regarding the "fairness" of

the contract process by the PRT Committee which decided not to recommend renewal of his teaching contract at UD. Han asserts that the issue of "fairness" is a "paradigm jury question." In support of his argument, Han relies on a federal case from Iowa, *Islami v. Covenant Medical Center, Inc.*, 822 F.Supp. 1361 (N.D.Iowa 1992), for the proposition that a question of procedural "fairness" in performance of a contract always presents a question of fact. Therefore, summary judgment is inappropriate when allegations of "unfairness" are presented.

{¶ 36} Han, however, misstates the court's holding in *Islami*. Contrary to Han's assertion, *Islami* acknowledges that summary judgment can be entirely appropriate when the contract requires compliance with "fair" procedures and those procedures are in fact followed. In *Islami*, the court determined that the critical issue in the case was whether the procedures (hospital by-laws) afforded to the plaintiff doctor by the defendant hospital were fair under the circumstances. The court found that issue to be the "paradigm jury question." *Id*. at 1374. This is not the same as saying "fairness" is always a jury question.

{¶ 37} Han's first claim was for breach of contract. "Generally, a plaintiff must present evidence on several elements to successfully prosecute a breach of contract claim. Those elements include the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." (Citations omitted.) *Doner v. Snapp*, 98 Ohio App.3d 597, 600-601, 649 N.E.2d 42 (2d Dist.1994). We have previously noted the following:

When reviewing a contract, the court's primary role is to ascertain and give effect to the intent of the parties. *Hamilton Ins. Serv., Inc. v. Nationwide*

*Ins. Cos*., 86 Ohio St.3d 270, 273, 714 N.E.2d 898 (1999). A contract that is, by its terms, clear and unambiguous requires no real interpretation or construction and will be given the effect called for by the plain language of the contract. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 55, 544 N.E.2d 920 (1989).

*Westerfield v. Three Rivers Nursing & Rehab. Ctr., L.L.C.*, 2d Dist. Montgomery No. 25347, 2013-Ohio-512, ¶ 21.

**{¶ 38}** In the instant case, Han does not argue that UD violated any objective procedural requirements with respect to the non-renewal of his teaching contract. Rather, Han argues that UD acted "unfairly" towards him in a general sense. Han contends that the concept of "fairness" is an independent contractual obligation of UD. In support of this argument, Han points out two places where the word "fairness" is used in the UD Faculty Handbook. The first instance where "fairness" is mentioned is in the context of whether the University should support a policy favoring detailed notice of the reasons for non-renewal of a teaching contract. The second instance where the Faculty Handbook mentions "fairness" is in regards to a University department's considerations for development of policies for peer evaluation. In neither instance does the Faculty Handbook create an independent obligation of "fairness" separate and distinct from the procedure to be implemented. Simply put, the UD Faculty Handbook and the UDSL PRT policy only promote the concept of "fairness" as it relates to the creation and implementation of its procedures. Furthermore, Han has produced no evidence that the PRT committee implemented its decision to recommend non-renewal of his teaching contract in an "unfair" manner.

{¶ 39} We find that the following sections from Han's teaching contract are pertinent to our discussion:

SPECIAL PROVISIONS OF APPOINTMENT: Acceptance of this contract cancels all other existing agreements and denotes:

\*\*\*

2. Agreement to devote full-time effort to teaching within your competence, at the direction of your Department Chairperson and Dean, research and publication and such other collateral activities, including advising of students, study by way of preparation for teaching, committee and administrative work, as are usually associated with this position and may be prescribed by the University of Dayton through its administrative officers.

\*\*\*

5. Agreement to employment under policies and conditions outlined in the Faculty Handbook \*\*\*.

\*\*\*

7. Agreement to renewal of employment for subsequent academic years at the expiration of this contract unless prior notice in writing is given by either party in advance of termination, according to regulations in the Faculty Handbook. This requirement of notice shall bind both parties to the contract equally. \*\*\*.

{¶ 40} Han's teaching contract was not renewed because the Dean accepted the PRT Committee's finding that he did not produce adequate scholarship to merit continued

retention as a professor at UDSL. This is the sole reason relied upon by Dean Kloppenberg when she decided not to renew Han's teaching contract.[2] Han was put on notice that the PRT committee was seriously concerned with his scholarship pursuits in his 2010 performance evaluation, wherein the committee criticized him for the quality of his scholarship. Han cannot compel this Court to sit as a second review committee to decide if UDSL should have retained him, despite the PRT committee and the Dean's conclusion that his record of scholarship was insufficient for retention pursuant to the university's standards. *Ohio University v. Ohio Civ. Rights Comm.*, 175 Ohio App.3d 414, 2008-Ohio-1034, 887 N.E.2d 403, ¶ 112 (4th Dist.). Moreover, we note that Han is not entitled to exact compliance with the procedural terms of his teaching contracts, but only substantial compliance. *Valente v. University of Dayton*, 689 F.Supp.2d 910, 918 (S.D.Ohio 2010). The evidence submitted by UD in support of its motion for summary judgment, at the very least, establishes that it substantially complied with the terms of Han's teaching contract and its own internal policies as set forth in the Faculty Handbook and the PRT policy guide.

{¶ 41} Additionally, Han argues that the PRT committee failed to timely evaluate him, failed to consider student evaluations, did not disseminate or "jury" his publications to scholars for review outside the university, engaged in a series of lies and misrepresentations, and failed to provide a tenure process that aided in his professional development. However, the only evidence Han provides in support of these assertions is his own uncorroborated affidavit. Self-serving affidavits made by the non-moving party normally cannot be used to

---

[2] In addition to his lack of scholarly publications, the PRT committee also found that Han's teaching performance was unsatisfactory in the 2011 recommendation to Dean Kloppenberg. However, the recommendation and finding was not adopted by the Dean.

survive summary judgment. *Pinchot v. Mahoning Cty. Sheriff's Dept.*, 164 Ohio App.3d 718, 2005-Ohio-6593, 843 N.E.2d 1238, ¶ 24, 26 (7th Dist.). The record establishes that the PRT committee engaged in a substantially timely evaluation of Han. As was the case in 2011, the PRT committee informed Han that his evaluation would be late and provided him with adequate notice and time to respond appropriately. Han has provided us with no evidence that he suffered any prejudice as a result of the PRT committee's decision to continue the dates of his 2011 evaluation meetings. More importantly, the evidence submitted by UD establishes that the only applicable deadline imposed on the PRT committee by Han's contract was the dealine for notice of non-renewal of May 15, 2011. Han received his notice of non-renewal from UD on May 11, 2011.

{¶ 42} The record also establishes that the PRT committee considered peer evaluations submitted by Han. The peer evaluations ultimately had no bearing on the decision by the PRT committee to recommend non-renewal of his teaching contract. The PRT committee was aware that Han was well-liked and respected in the legal and educational community. The reason that Han's teaching contract was not renewed was because of his insufficient scholarly publications. The decision to not renew was not based upon his peer evaluations. Additionally, although the PRT committee ultimately found his teaching to be unsatisfactory, the committee acknowledged that it reviewed favorable student evaluations. Similar to its limited consideration of the peer evaluations, the student evaluations were simply not a factor in the PRT committee's decision to recommend non-renewal of Han's teaching contract.

{¶ 43} We also note that the record establishes that UD was not required to "jury"

Han's publications. Review of the Faculty Handbook and PRT policy only states that the committee "may" but is not required to "jury" a non-tenured professor's publications.

{¶ 44} Furthermore, Han asserts that the PRT committee lied and misrepresented facts to him regarding the following: 1) the page length of the analysis section of a student's case note which preempted all of his efforts at scholarly publication in 2011; at his deposition, Han conceded that the PRT committee had not lied about the number of pages in the analysis section; 2) the same student's case note lacked "quality and depth;" the actual comment made by the PRT committee called into question the "quality and depth" of Han's own research; 3) a statement by the chairperson of the PRT committee that Dean Kloppenberg had not seen a copy of the committee's draft report at an evaluation meeting on April 5, 2011, when in fact she had already seen the report; Han testified at his deposition that at the time of the meeting he was aware that Dean Kloppenberg had seen the report and he admitted that the misrepresentation caused him no harm; 4) that in the April 19, 2011 final report, the PRT committee misstated the date of the April 5, 2011, meeting as occurring on March 29, 2011; this was just a simple typographical error that did not prejudice Han in any way; 5) that in the April 19, 2011, final report it indicates that Han had never approached the PRT committee for guidance, when in fact he had asked the committee for guidance at the April 5, 2011, meeting; the actual statement made by the PRT committee in the April 19, 2011, report was that Han did not approach them for guidance "after [the] 2010 report and recommendations" wherein he was warned that his scholarly pursuits were lacking; and 6) that the PRT committee falsely stated in its 2011 final report that "it was surprised by [Han's] teaching overload" since Han claims to have informed a few of the

members of the committee of his overload; whether this assertion is true or false does not create a genuine issue of material fact. Accordingly, each of the "lies and falsehoods" identified by Han were either not false statements or simply had no bearing on the proceedings in any substantive manner.

{¶ 45} The trial court also correctly determined that UD had no contractual duty or obligation imposed upon it by virtue of the Faculty Handbook or the PRT policy guide to ensure Han's "professional development." The Faculty Handbook clearly states that professional "[d]evelopment is an individual concern *that cannot be imposed upon a faculty member* but must derive from his or her own felt need for growth and the access to the resources to accomplish that growth." A comparable section is found in the PRT policy guide which states in pertinent part:

1. Phases in the Professional Development of Faculty Members

***

a. "Credentialing Period"

During the credentialing period, the faculty member *develops his or her individual abilities and habits as a teacher-scholar and demonstrates himself or herself capable of assuming the role of a faculty member.*

b. "Post-Credentialing Period"

During the post-credentialing period, the faculty member *continues to develop to his or her potential as a teacher-scholar and becomes a full, contributing member of the Law School, University, and professional communities.*

January 20, 1952

Thus, pursuant to the express terms of the Faculty Handbook and the PRT policy guide, any duty regarding "professional development" was Han's responsibility to pursue and achieve, not UD and/or the PRT committee. We note that in its 2010 evaluation, the PRT committee gave Han several suggestions for the improvement of his scholarly publications. The fact that Han did not avail himself of those recommendations is not the responsibility of the PRT committee. Accordingly, the trial court did not err when it granted UD's motion for summary judgment with respect to the issue of Han's professional development.

{¶ 46} Upon review, we conclude that the materials submitted by Han do not create genuine issues of material fact which prevent summary judgment for UD. Han's teaching contract was non-renewed solely because he failed to produce satisfactory scholarly publications while he was employed at UDSL. For the same reason, his claims for fraud and promissory estoppel also fail. A claim for promissory estoppel cannot be pursued where there is a contract covering the same subject matter. As this Court has noted:

> Promissory estoppel is an equitable doctrine. It applies when no contract has yet been formed, but a promise is made which the promisor reasonably should expect to induce action or forbearance on the part of the promisee, and which does induce such action or forbearance. *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 483 N.E.2d 150. The promise will be held to be binding if injustice can be avoided only by its performance. *Id.* If the promise is not then performed, the promisee is entitled to specific performance and/or damages.

*Walker v. Univ. Med. Servs.*, 2d Dist. Montgomery No. 20141, 2004-Ohio-1321, ¶ 14. Han's employment was governed by a series of renewable annual contracts which establish the procedures for promotion, retention, and tenure. Accordingly, his claim for promissory estoppel must fail.

{¶ 47} As to Han's fraud claim, the elements of that cause of action require an unambiguous commitment or a false statement of a past or present fact that a plaintiff reasonably relied on to his detriment. *Langford v. Sloan*, 162 Ohio App.3d 263, 2005-Ohio-3735, 833 N.E.2d 331 (2d Dist.). Based on the foregoing analysis, Han failed to present any evidence that any such statements were ever made or that there was specific reliance on such statements.

{¶ 48} "The elements of the tort of tortious interference with a contract are (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages." *Fred Siegel Co., LPA v. Arter & Hadden*, 85 Ohio St.3d 171, 707 N.E.2d 853 (1999), paragraph one of the syllabus.

{¶ 49} In the instant case, the element of lack of justification has not been met. The Dean's basis for non-renewal of Han's teaching contract was insufficient scholarship. There is no evidence in the record that the individual members of the PRT committee or the Dean intentionally, or unintentionally, procured a breach of Han's teaching contract with UDSL. In sum, we find no issues of material fact regarding Han's claim for tortious interference with a contract, and the trial court did not err when it granted UD's motion for summary judgment with respect to that claim.

**{¶ 50}** Han's final claim is for respondeat superior. Under the theory of respondeat superior, an employer may be held liable for the negligent acts of it employee if those acts were taken in the employee's scope of employment. See *Strock v. Pressnell*, 38 Ohio St.3d 207, 217, 527 N.E.2d 1235 (1988). However, when an employee accused of wrongdoing has been found to have no liability to the party claiming injury, the employer cannot be independently found liable under a theory of respondeat superior since any liability of the employer is only derivative of that of the employee. *Id*.; *Moncol v. Royalton School Dist. Bd. of Edn.*, 55 Ohio St.2d 72, 378 N.E.2d 155 (1978). As we have previously discussed, Han's tort claims against the individual members of the PRT committee for fraud and tortious interference fail as matter of law. Accordingly, there is no tort committed by the individual appellees for which UD could be held vicariously liable. Therefore, the trial court did not err when it found that UD was entitled to summary judgment on Han's claim for respondeat superior.

**{¶ 51}** Thus, construing the evidence most strongly in Han's favor, reasonable minds can come to but one conclusion – that Han cannot prevail on any of his claims. UD was entitled to judgment as a matter of law, and the trial court did not err when it granted summary judgment in its favor.

**{¶ 52}** Han's second assignment of error is overruled.

**{¶ 53}** Han's third and final assignment of error is as follows:

**{¶ 54}** "THE LOWER COURT ERRED AS A MATTER OF LAW BY OVERRULING PLAINTIFF-APPELLANT'S MOTION TO AMEND THE COMPLAINT AND ADD PARTIES."

**{¶ 55}** In his third assignment, Han argues that the trial court erred when it overruled his motion for leave to add additional defendants, UD's trial counsel and his law firm, to his lawsuit. Han asserts that the trial court also erred when it overruled his motion to file a second amended complaint asserting a single new claim of litigation misconduct. Han filed his second motion for leave to amend the complaint after his deposition had been completed and after he became aware that UD was about to file a motion for summary judgment. Han originally filed his second motion for leave to amend the complaint on August 14, 2013. Two days later on August 16, 2013, the trial court granted UD's motion for a stay which included Han's motion. On March 18, 2014, the trial court granted UD's motion for summary judgment. Subsequently, both parties filed briefs with the trial court in support of their respective positions, and on May 23, 2014, the trial court overruled Han's motion for leave to add parties and file a second amended complaint.

**{¶ 56}** The trial court should construe motions to amend in favor of the movant to allow the plaintiff to save the cause of action, and the granting of leave should not be withheld absent good reason. *Solowitch v. Bennett*, 8 Ohio App.3d 115, 456 N.E.2d 562 (8th Dist. 1982). This liberal construction is supported by the language in Civ.R. 15(A):

A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within twenty-eight days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party. Leave of court shall be

freely given when justice so requires.

{¶ 57} Despite the liberal policy in granting motions to amend, the appellate review of a trial court's decision regarding a motion to amend consists of determining whether the trial judge's decision was an abuse of discretion, not whether it was the same decision we might have made. *Wilmington Steel Products, Inc. v. Cleveland Electric Illuminating Co.*, 60 Ohio St.3d 120, 122, 573 N.E.2d 622 (1991), citing *State ex rel. Wargo v. Price*, 56 Ohio St.2d 65, 381 N.E.2d 943 (1978). This appellate review has narrow limits. *Id*. at 122.

{¶ 58} Justice does not require the granting of leave when a proposed amended complaint, not submitted as a matter of right, seeks to add new parties or seeks to assert a completely new claim, "where a plaintiff fails to make a prima facie showing of the new matters sought to be pleaded." *Id*. at 123.

{¶ 59} Despite the trial court's failure to explain the reasons why it denied Han's motion to amend, we find that the motion did not comply with Civ.R. 15(A). Specifically, we find that Han has failed to plead any operative facts in his second amended complaint to make a prima facie showing that UD's trial counsel engaged in any litigation misconduct pursuant to R.C. 2323.51. There is nothing in Han's second motion for leave to amend or the proposed complaint which supports his claim of litigation misconduct. We also note that the affidavits of the two attorneys who were unrelated to the action were conclusory and cannot be used to create a genuine issue of material fact so as to avoid summary judgment on Han's claims. Moreover, permitting Han to add UD's trial counsel and law firm as defendants in the instant case would clearly prejudice appellees, especially at this stage of the litigation. On these facts, we cannot find that the trial court abused its discretion in

refusing to allow Han leave to file a second amended complaint.

**{¶ 60}** Han's third assignment of error is overruled.

**{¶ 61}** All of Han's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FROELICH, P.J., DONOVAN, J., and WELBAUM, J., concur.

Copies mailed to:

Sam Han
Paul G. Hallinan
Ana E. Perez
Hon. Timothy N. O'Connell